RECEPT #
AMOUNT $
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY CLK
DATE

## UNITED STATES DISTRICT COURT
## DISTRICT COURT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TURNBERRY ASSET MANAGEMENT, on behalf of itself and all others similarly situated, | : | **Civil Action No.** |
| | : | |
| **Plaintiff,** | : | |
| | : | **CLASS ACTION COMPLAINT** |
| v. | : | |
| | : | |
| VIISAGE TECHNOLOGY, INC., BERNARD C. BAILEY, WILLIAM K. AULET, DENIS K. BERUBE, BUDDY G. BECK, MARCEL YON, THOMAS J. REILLY, CHARLES E. LEVINE, HARRIET MOUCHLY-WEISS, PAUL T. PRINCIPATO, and PETER NESSEN, | : | **JURY TRIAL DEMANDED** |
| **Defendants.** | : | |

# 05 CV 10725 MLW

MAGISTRATE JUDGE _____

Plaintiff alleges the following based upon the investigation of Plaintiff's counsel, which included inspection of United States Securities and Exchange Commission ("SEC") filings by Viisage Technology, Inc. ("Viisage" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of purchasers of the Company's publicly traded securities during the period from May 3, 2004 through March 2, 2005 (the "Class Period").

2.     Viisage claims to be a leading provider of advanced technology identity solutions that enable governments, law enforcement agencies and businesses to enhance security, reduce identity theft, and protect personal privacy.  Viisage combines its proprietary biometric and secure credential software with complementary industry standard products to create turnkey solutions for its customers that integrate secure document technologies, image and data capture, relational databases, and multiple biometrics, improving the customer's ability to process and manage identity information.

3.     Viisage's operations began in 1993 and, except for fiscal years 1996 and 2000, incurred losses in each fiscal year.  As of June 27, 2004, Viisage had approximately $12.6 million of cash and cash equivalents, and $29.8 million in total debt obligations.  As a result, Viisage was in a near constant state of capital deficiency to fund its operations.  At the same time, the Company was indebted to two of its directors (or entities controlled by them) for more than $20 million.

4.     By the beginning of the Class Period, the defendants were concerned that the Company's continued losses would further erode the value of their stock option holdings and preclude them from being able to raise any additional capital to fund the Company's operations.  In fact, by late spring 2004, the Company had only $9 million left in the Company's coffers.  Defendants knew that unless they could immediately prop up the Company's share price and complete a secondary offering of Viisage stock, the Company's ability to continue as a going concern would be in jeopardy.  If defendants failed to generate the necessary interest in the offering, they ran the risk that the bankers would convert the secondary offering into a "best efforts" offering, not a "firm commitment offering," as defendants had tentatively agreed to with the Company's bankers.  There was also the risk that the bankers would decline to participate in

the offering if the Company's shares or its prospects showed weakness.[1] Defendants were also keenly aware that by representing that the Company *would* report millions in profits in future quarters, they would be able to attract investors. However, the Company had not reported a quarterly profit in at least three years and defendants knew that the Company's fourth quarter 2004 would be no different. In fact, the Company was on track to report continued losses through 2004 and beyond. Thus, the key to defendants' plan to reinvigorate interest in (and ultimately inflate) the Company's shares was to convince prospective shareholders that the Company was on the verge of its first profitable quarter in years.

5.    In an effort to foster substantial investor interest, defendants, together with their investment bankers, scrambled to make as many presentations about Viisage as possible. On May 5, 2004, defendants presented the Company and its prospects at the J.P. Morgan 32nd Annual Tech and Telecom conference in San Francisco. On May 18, 2004, defendants presented again at the American Electronics Association Micro Cap Financial Conference in Monterey, California. On May 19, 2004, defendants presented for a third time that month at the Piper Jaffray Technology Conference in New York City.

6.    At multiple times during the Class Period, defendants continued to *reassure* prospective investors of profitability and, in fact, actually *increased* the Company's profitability estimates for 2004, stating:

> "This progress provides us with the confidence to confirm our guidance for 2004. We continue to expect revenue between $60-63 million and EBITDA of $11-12 million."

> "Company increases guidance for 2004."

> "The Company's performance for the third quarter, combined with

---

[1] Unlike a "firm commitment offering," in a "best efforts offering" a company is not guaranteed by the bankers that all shares will be sold.

our accomplishments so far this quarter, give us the confidence to increase both our revenue and EBITDA guidance for 2004."

"[W]e are pleased with the terms of our acquisition of Imaging Automation, since we believe this transaction will be accretive on a net income. EBITDA and EPS basis in 2005, and will help us continue to drive revenue and profit growth not only this year, but for many years to come."

"Viisage is increasing its guidance for 2004, with annual revenue now anticipated to be between $66-68 million, increased from $60-63 million, and EBITDA anticipated to be between $11.5-12.5 million, increased from EBITDA of $11-12 million."

7.     Defendants' "visions" and "tune" dampened just prior to the end of its final audit stages for 2004, but only after consummating the Company's August 5, 2004 Secondary Offering of 7.5 million shares of common stock (the "August 5, 2004 Secondary Offering"). The Company's investors were in for a rude awakening. On March 2, 2005, after the market closed, the Company issued a press release entitled "Viisage Reports Fourth Quarter 2004 Results." The press release stated in part:

In connection with the preparation of the Company's consolidated financial statements for the year ended December 31, 2004, the Company determined that it had an internal control deficiency that constitutes a 'material weakness' as defined by the Public Company Accounting Oversight Board's Accounting Standard No. 2. The Company has concluded that it had insufficient personnel resources and technical accounting expertise within the accounting function to resolve non-routine or complex accounting matters. As a result, management will be unable to conclude that the Company's internal controls over financial reporting are effective as of December 31, 2004. Therefore, BDO Seidman LLP, the Company's external accounting firm, will issue an adverse opinion with respect to the effectiveness of the Company's internal controls over financial reporting. In addition, as part of the Sarbanes-Oxley Section 404 compliance review, the Company is in the process of reviewing all of its other key internal control processes as well. While the evaluation - is ongoing, management believes that it will likely conclude that the Company had significant deficiencies, which could constitute a material

weakness, in the control processes around information technology systems as well.

8.      As a result of this disclosure, the Company's shares plummeted 25% to $4.50 per share on March 3, 2005, causing shareholders to lose tens of millions of dollars, as well as calling into question the veracity of defendants' prior statements. On March 17, 2005, shareholders were again stunned by alarming news when the Company admitted that it could not file its annual report on time. Although required by SEC regulations, the Company admitted it could not file a "complete and accurate annual report." With this news, the Company's shares were once again fell dramatically.

9.      On March 31, 2005, the Company announced that it would be delayed in filing its Form 10-K for the year ended December 31, 2004, in order to provide additional time for the Company, its independent auditors and outside counsel to complete a review of the litigation involving the Company. As a result of the delay in filing its Form 10-K, Viisage's stock was delisted from the Nasdaq national market, changing the Company's trading symbol from "VISG" to "VISGE."

10.     On April 1, 2005, J.P. Morgan lowered its investment rating on Viisage to "underweight" from "neutral," citing expectations for risk to sales and earnings forecasts due to a slower-than-expected deployment of a coordinated government ID system

11.     The true facts, which were known by each of the defendants but concealed from the investing public during the Class Period, were as follows:

(a)     the Company lacked requisite internal controls, and, as a result, the Company's projections and reported results were based upon defective assumptions and/or manipulated facts;

(b)     contrary to defendants' claims of profitability for the fourth quarter of 2004, the Company was actually on track to report losses;

5

(c)     the Company's information technology systems were materially compromised, which also materially impacted the Company's ability to issue accurate financial statements and projections;

(d)     defendants concealed these deficiencies for multiple quarters in order to: (i) delay the cost of implementing the proper system controls and thereby temporarily inflate the Company's net income; and (ii) provide defendant with a pliable system that would allow them to cause the Company to report financial results irrespective of their accuracy; and

(e)     as a result of (a)-(d) above, the Company's projections for fiscal year 2004 were grossly inflated.

12.     As a result of the defendants' false statements, Viisage's stock price traded at artificially inflated levels during the Class Period, which allowed the Company and its top officers and directors to sell more than $39 million worth of Company shares in the August 5, 2004 Secondary Offering. After the Company made its March 3, 2005 disclosure, the precipitous drop in Viisage's share price was followed by an immediate outcry from Wall Street analysts (including Unterberg Towbin and JMP Securities) who collectively downgraded the Company's shares.

## JURISDICTION AND VENUE

13.     This action arises under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), [15 U.S.C. §§ 77k, 77l(a)(2), and 77(o)]; and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), [15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, [17 C.F.R. 240.10b-5].

14.     This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act of 1933 ("Securities Act"), [15 U.S.C. § 77v], and Section 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), [15 U.S.C. § 78aa], and 28 U.S.C. §§ 1331 and 1337.

15.    Venue is proper in this District pursuant to the provisions of Section 22 of the

Securities Act [15 U.S.C. § 77v], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and 28

U.S.C. § 1391(b). The Company has its principal place of business at 296 Concord Road, Third

Floor, Billerica, MA 01821 and many of the acts and transactions giving rise to the violations of

law complained of herein, including the preparation and dissemination to the investing public of

false and misleading information occurred in this District. In connection with the acts, conduct

and other wrongs complained of herein, the defendants used the means and instrumentalities of

interstate commerce.

## THE PARTIES

16.    Plaintiff Turnberry Asset Management ("plaintiff" or "Turnberry") purchased the

Company's publicly traded securities as detailed in the attached Certification and was damaged

thereby. Turnberry also purchased Viisage common shares on the Company's secondary

offering from JP Morgan, one of the underwriters of the offering, and was damages thereby.

17.    Defendant Viisage is a provider of identity solutions that enable governments, law

enforcement agencies and businesses to enhance security, reduce identity theft, and protect

personal privacy in the business of designing, developing and marketing educational products,

including hardware and software. Viisage is a publicly traded company whose common stock is

traded on the NASDAQ National Market System under the ticker "VISG".

18.    Defendant Bernard C. Bailey ("Bailey"), at all relevant times, served as President

and Chief Executive Officer of Viisage. Bailey joined Viisage in August 2002 as Chief

Executive Officer and was appointed a Director of Viisage in April 2004. Bailey signed

Viisage's Form 10-Qs for its quarters ended June 27, 2004 and September 26, 2004, and

Viisage's Registration Statement on Form S-3 filed with the SEC on June 21, 2004, and the

Amended Form S-3 filed with the SEC on July 22, 2004 for the Company's August 5, 2004 Secondary Offering of 7.5 million shares of common stock.

19.     Defendant William K. Aulet ("Aulet"), at all relevant times, has served as the Chief Financial Officer of Viisage. Aulet joined Viisage in February 2003 as Chief Financial Officer. Aulet signed Viisage's Form 10-Qs for its quarters ended June 27, 2004 and September 26, 2004, and Viisage's Registration Statement on Form S-3 filed with the SEC on June 21, 2004, and the Amended Form S-3 filed with the SEC on July 22, 2004 for the Company's August 5, 2004 Secondary Offering of 7.5 million shares of common stock.

20.     Non-party Lau Acquisition Corp., d/b/a Lau Technologies ("Lau"), beneficially owns 13.8 percent of the Company's stock. The Company has significant relationships with Lau. The Company previously acquired Lau Security Systems from Lau. Prior to the Company's August 5, 2004 Secondary Offering, Lau provided the Company with a credit facility in an aggregate principal amount of $7.3 million, which was secured by some the Company's assets. Lau is the largest holder of Viisage common stock, directly owning approximately 17% of its issued and outstanding common stock prior to the Class Period and had provided financing to the Company. During the Class Period, Lau sold 352,000 shares of Viisage common on the open market realizing proceeds of $2,889,612.50. In addition, Lau realized proceeds of $779,779.00 from the sale of 141,778 shares of Viisage common stock pursuant to the Registration Statement for Viisage's August 5, 2004 Secondary Offering of approximately 7.5 million shares of common stock.

21.     Defendant Denis K. Berube ("Berube"), at all relevant times, has served as Chairman of the Board of Viisage, and has served in that capacity since the Company's incorporation in 1996. Mr. Berube is Executive Vice President and Chief Operating Officer of

Lau. Berube signed Viisage's Registration Statement on Form S-3 filed with the SEC on June 21, 2004, and the Amended Form S-3 filed with the SEC on July 22, 2004 for the Company's August 5, 2004 Secondary Offering of 7.5 million shares of common stock. Viisage repaid in full its $4.3 million debt obligation to Lau from the proceeds of the August 5, 2004 Secondary Offering.

22.    Defendant Marcel Yon ("Yon"), at all relevant times, has served as a Director of, and consultant to, Viisage. Yon was formerly CEO of ZN Vision Technologies, a company acquired by Viisage in 2003. Yon is the Chief Executive Officer of Odeon Venture Capital AG, which, prior to the Class Period, owned 949,325 shares of Viisage common stock. Yon has sole voting and dispositive power over the shares beneficially owned by Odeon. During the Class Period, Odeon sold 770,473 shares of Viisage common stock on the open market realizing proceeds of $6,127,489.69. In addition, Odeon realized proceeds of $743,363.50 from the sale of 135,157 shares of Viisage common stock pursuant to the Registration Statement for Viisage's August 5, 2004 Secondary Offering of 7.5 million shares of common stock. Yon signed Viisage's Registration Statement on Form S-3 filed with the SEC on June 21, 2004, and the Amended Form S-3 filed with the SEC on July 22, 2004 for the Company's August 5, 2004 Secondary Offering of 7.5 million shares of common stock.

23.    Defendant Buddy G. Beck ("Beck"), at all relevant times, has served as a Director of, and consultant to, Viisage as well as its Vice Chairman of the Viisage's Board of Directors. Beck was the President and Chief Executive Officer of Trans Digital Technologies Corporation from 1998 until its acquisition by Viisage in February 2004. In connection with that acquisition, the Company assumed a $15.3 million debt to Beck. Prior to the Class Period, Beck owned 5,869,651 shares, representing 16.4 percent of Viisage's issued and outstanding common stock.

During the Class Period, Beck realized proceeds of $779,779 from the sale of 141,778 shares of Viisage common stock pursuant to the Registration Statement for Viisage's August 5, 2004 Secondary Offering of 7.5 million shares of common stock. Beck signed Viisage's Registration Statement on Form S-3 filed with the SEC on June 21, 2004, and the Amended Form S-3 filed with the SEC on July 22, 2004 for the Company's secondary offering of 7.5 million shares of common stock. Viisage repaid in full its $15.3 million debt obligation to Beck from the proceeds of the August 5, 2004 Secondary Offering.

24.    Defendant Charles A. Levine ("Levine"), at all relevant times, has served as a Director and member of the Audit Committee of the Board, charged with responsibility for overseeing the Company's accounting, financial reporting, data processing, regulatory, and internal control environments. The Audit Committee meets at least quarterly to review the Company's quarterly financial releases. Levine sold 9,000 shares of Viisage common stock during the Class Period and realized proceeds of $63,000. Levine signed Viisage's Registration Statement on Form S-3 filed with the SEC on June 21, 2004, and the Amended Form S-3 filed with the SEC on July 22, 2004 for the Company's August 5, 2004 Secondary Offering of 7.5 million shares of common stock.

25.    Defendant Thomas J. Reilly ("Reilly"), at all relevant times, has served as a Director and member of the Audit Committee of the Board. Reilly sold 10,000 shares of Viisage common stock during the Class Period and realized proceeds of $8,700. Reilly signed Viisage's Registration Statement on Form S-3 filed with the SEC on June 21, 2004, and the Amended Form S-3 filed with the SEC on July 22, 2004 for the Company's August 5, 2004 Secondary Offering of 7.5 million shares of common stock.

26.     Defendant Harriet Mouchly-Weiss ("Mouchly-Weiss"), at all relevant times, has served as Director and signed Viisage's Registration Statement on Form S-3 filed with the SEC on June 21, 2004, and the Amended Form S-3 filed with the SEC on July 22, 2004 for the Company's August 5, 2004 Secondary Offering of 7.5 million shares of common stock.

27.     Defendant Paul T. Principato ("Principato") was a director of the Company and is Chief Financial Officer of Lau. Principato signed Viisage's Registration Statement on Form S-3 filed with the SEC on June 21, 2004, and the Amended Form S-3 filed with the SEC on July 22, 2004 for the Company's August 5, 2004 Secondary Offering of 7.5 million shares of common stock.

28.     Defendant Peter Nessen ("Nessen") was a director of the Company at all relevant times and signed Viisage's Registration Statement on Form S-3 filed with the SEC on June 21, 2004, and the Amended Form S-3 filed with the SEC on July 22, 2004 for the Company's August 5, 2004 Secondary Offering of 7.5 million shares of common stock.

29.     Each of the defendants named above are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased the Company's publicly traded securities (the "Class") during the Class Period. Excluded from the Class are the defendants herein, the directors, officers, and employees of the Company, the members of each Individual Defendants' immediate families, any entity in which any defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors and predecessors in interest or assigns of any such excluded party.

31.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. During the Class Period, Viisage had outstanding at least 47 million shares of common stock, owned by thousands of persons.

32.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiffs and all of the Class members sustained damages arising out of the same wrongful conduct complained of herein.

33.     Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel who are experienced and competent in class and securities litigation. Plaintiff has no interests that are contrary to or in conflict with the members of the Class Plaintiff seeks to represent.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

35.     Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include: (a) whether defendants violated the federal securities laws; (b) whether defendants omitted and/or misrepresented material facts; (c) whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; (d) whether defendants knew or recklessly disregarded that their

statements were false and misleading; (e) whether Viisage shares were artificially inflated during

the Class Period; and (f) whether the members of the Class have sustained damages and, if so,

what is the appropriate measure of damages.

### FALSE AND MISLEADING STATEMENTS DURING THE CLASS PERIOD

36. On May 3, 2004, the Company issued a press release entitled "Viisage Reports

First Quarter 2004 Results; Revenues Increase 50% Year-over-Year Reflecting Momentum and

Acquisitions; Company Raises Revenue and Earnings Guidance." The press release stated in

part:

> Viisage, a leading provider of advanced technology identity
> solutions, today announced results for the first quarter ended
> March 28, 2004.
>
> Revenues for the first quarter of 2004 totaled $12.26 million, the
> third consecutive record quarterly attainment, up from $8.16
> million in the comparable period last year, as reported in
> accordance with the change in accounting principle. The net loss
> for the first quarter of 2004 was $1.63 million, or $0.05 per basic
> and diluted share, compared to the reported net loss of $2.37
> million, or $0.12 per basic and diluted share, for the first quarter of
> 200.3, which excludes the one-time change of $12.13 million or
> $0.60 per share that the Company recorded in connection with its
> change in accounting principle. Including the charge, the net loss
> for the first quarter of 2003 was $14.50 million or $0.72 per share
> on a basic and diluted basis.
>
> On December 30, 2003, Viisage adopted new accounting rule
> EITF 00-21, "Accounting for Revenue Arrangements with
> Multiple Deliverables," which pertains to revenue recognition for
> certain long-term contracts, such as Viisage's state drivers'
> licenses, retroactively to January 11, 2003.
>
> "The first quarter of 2004 was filled with milestones that
> concretely demonstrate the transformation of our company into an
> identity solutions company, combining biometrics, secure
> credentials, and other technologies to solve a wide range of
> customer problems," said Bernard Bailey, president and chief
> executive officer. "We significantly expanded our leadership

positioning in biometrics with the successful acquisition and integration of ZN Vision Technologies AG, which led to key strategic wins including the U.S. Department of State Diversity Visa Program."

"We also greatly improved our secure credentialing capabilities this quarter through the acquisition and integration of Trans Digital Technologies Corporation ('TDT') in February," Bailey added. "The Department of Defense's subsequent selection of Viisage to provide the technology for the Common Access Card, the U.S. government's largest smart card program, added significant traction in the U.S. Federal government market, one of our strategic target markets. At the same time, we kept driving top-line revenue growth and made progress in generation of EBITDA (earnings before interest, taxes, depreciation and amortization). While results fell short of analysts' estimates due to timing of a single shipment to the Department of State of $1.6 million, which was recognized during the first week of April, we are making excellent progress in executing on our vision and strategy. This operational achievement provides us with the confidence to increase our outlook for the year. *Based upon what we have accomplished so far, and what we see in the sales pipeline, we are increasing our annual revenue guidance from $57- $60 million to $60 - $63 million and our EBITDA guidance from over $10 million to $11 - $12 million."*

Bailey concluded, *"As we look to the balance of 2004, we believe Viisage is extremely well-positioned to compete successfully for emerging opportunities, both domestically* and internationally. Our goal is to provide our customers with advanced technology identity solutions for applications such as enhanced drivers' licenses, border control and criminal booking and investigative systems."

Bill Aulet, Viisage's chief financial officer, added, "Viisage significantly improved its financial performance on a year-over-year basis. This was a result of a revenue increase of *50%* as well as a robust gross margin improvement of 11 points or 63%. EBITDA shifted from a loss of $229,000 to a positive contribution of $1.06 million. Cash at the end of the quarter totaled $12.40 million. *In addition to our increased forecasts for revenue and EBITDA, today we are also updating our guidance for net income, which we now expect to be no more than a net loss of $0.5 million, compared to our earlier forecast of a net loss of no more than $3 million."* [Emphasis Added].

14

37.    The Company's shares soared nearly 25% immediately following defendants'
positive projections.

38.    Defendants appeared at numerous conferences in May 2004 to generate interest in
the Company's August 5, 2004 Secondary Offering. On May 5, 2004, defendants presented the
Company and its prospects at the JP Morgan 32nd Annual Tech and Telecom Conference in San
Francisco. On May 18, 2004, defendants presented again at the American Electronics
Association Micro Cap Financial Conference in Monterey, California. On May 19, 2004,
defendants presented for a third time that month at the Piper Jaffray Technology Conference in
New York City.

39.    On June 21, 2004, the Company filed a Form S-3 Registration Statement
containing a preliminary prospectus for the sale of 7.5 million shares of common stock. The
June 21, 2004 Registration Statement was signed by defendants Bailey, Aulet, Berube, Mouchly-
Weiss, Principato, Levine, Nessen, Reilly, Beck, and Yon.

40.    On June 22, 2004, just weeks after the Company's last high-profile presentation,
the Company issued a press release entitled "Viisage Announces Proposed Public Offering of
Common Stock." The press release stated in part:

> Viisage, a provider of advanced technology identity solutions,
> today announced that it has filed a registration statement with the
> Securities and Exchange Commission for the sale of 7,200,000
> newly-issued shares of its common stock in an underwritten public
> offering.

41.    On July 22, 2004, Viisage filed an amended Registration Statement with the SEC
with respect to Viisage's August 5, 2004 Secondary Offering of at least 7.5 million shares. The
July 22, 2004 Amended Form S-3 was signed by defendants Bailey, Aulet, Berube, Mouchly-
Weiss, Principato, Levine, Nessen, Reilly, Beck, and Yon.

42.    On August 5, 2004, Viisage filed a final prospectus (the "Prospectus") on Form

424B4 with the SEC in connection with the offering of 7.5 million shares at $5.50 per share -- at

least 300,000 shares of which were to be sold by defendants Beck, Berube and Yon. The

offering raised nearly $38 million for Viisage and approximately $2.3 million for Individual

Defendants Berube, Beck, and Yon.

43.    On August 11, 2004, defendants filed Viisage's Form 10-Q for the quarter ended

June 27, 2004. In that Form 10-Q, defendants stated under Item 4 - Controls And Procedures:

> (a) Evaluation of disclosure controls and procedures. Our
> management, with the participation of our Chief Executive Officer,
> or CEO, and Chief Financial officer, or CFO, evaluated the
> effectiveness of our disclosure controls and procedures (as defined
> in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange
> Act) as of June 27,2004. Based on this evaluation, our CEO and
> CFO concluded that, as of June 27, 2004, our disclosure controls
> and procedures were (1) designed to ensure that material
> information relating to us, including our consolidated subsidiaries,
> is made known to our CEO and CFO by others within those
> entities, particularly during the period in which this report was
> being prepared and (2) effective, in that they provide reasonable
> assurance that information required to be disclosed by us in the
> reports that we file or submit under the Securities Exchange Act is
> recorded, processed, summarized, and reported within the time
> periods specified in the Securities Exchange Commission's rules
> and forms.

44.    Defendants' statements regarding Viisage's internal controls were knowingly, or

recklessly, materially false and misleading because Viisage's internal controls were in fact so

woefully inadequate that, as admitted at the end of the Class Period, they qualified as being in a

state of "material weakness" under Public Company Accounting Oversight Board's Accounting

Standard No. 2.

45.    After the close of the market on October 25, 2004, Viisage announced "record"

results for the third quarter ended September 30, 2004 -- Viisage's first profitable quarter in three

years -- and increased Viisage's revenues and earnings guidance for 2004. Specifically, Viisage

stated in a press release:

> Revenues for the third quarter of 2004 totaled $19.91 million,
> marking the fifth consecutive quarter in which revenues set a
> Company record, up 97% from $10.11 million in the comparable
> period last year, as reported in accordance with the change in
> accounting principle described below. The net income for the third
> quarter of 2004 was $198,000, or $0.00 on a basic and diluted
> share basis, compared to a net loss of $389,000, or $0.02 per basic
> and diluted share, for the third quarter of 2003. On the basis of its
> results for the nine months, Viisage is increasing its guidance for
> 2004, with annual revenue now anticipated to be between $66-68
> million, increased from $60-63 million, and EBITDA anticipated
> to be between $11.5-12.5 million, increased from EBITDA of $11-
> 12 million. Viisage did not alter its prior projection that it would
> report a loss of $1.5 million for the year.

46.     In that press release, defendant Bailey also stated that "The Company's

performance for the third quarter, combined with our accomplishments so far this quarter, give

us the confidence to increase both our revenue and EBITDA guidance for 2004." Defendant

Aulet added:

> Viisage continued to significantly improve its financial
> performance and strengthen its balance sheet in the past quarter
> while maintaining the necessary financial flexibility. Our strong
> revenue performance coupled with careful expense management
> enabled us to produce our first profitable quarter on a GAAP basis
> in several years. At the same time, our focus on growing EBITDA
> (earnings before interest, taxes, depreciation and amortization)
> proved successful as it increased to $3.4 million this past quarter,
> from $1.5 million in the same quarter last year. Lastly, we are
> pleased with the terms of our acquisition of Imaging Automation,
> since we believe this transaction will be accretive on a net income,
> EBITDA and EPS basis in 2005, and will help us continue to drive
> revenue and profit.

47.     On October 26, 2004, defendants held a conference call with analysts, defendants

made similar representations regarding Viisage's record revenues and earnings and increased

guidance for 2004. In addition, defendant Aulet highlighted the significant benefits achieved

from the Company's August 5, 2004 Offering and its "record" results for the third quarter

stating:

> At the end of the third quarter of 2004 we had a cash position of
> approximately $37.36m compared to $12.6m at the end of the
> second quarter, reflecting the addition of net proceeds of
> approximately $37.9m from our follow-on offering, offset by the
> initial repayment of related party debt of approximately $10m. Of
> our cash position only approximately $3m or less than 10 percent
> is encumbered.
>
> As Bernard mentioned, we're pleased to announce as well today
> that we have received a commitment letter from a major bank for a
> $25m line of credit to replace our existing bank facilities. This new
> arrangement will not only give us valuable flexibility but will also
> reduce our rates of borrowing, significantly simplify our
> covenants, and increase yields on our money in the bank, all while
> making our G&A operations more productive by providing
> services locally and worldwide to meet our rapidly evolving needs.
>
> In the fourth quarter we will be able, if we so choose, to reduce our
> outstanding debt quite significantly, and after paying off early
> repayment fees save approximately $600,000 a year in interest
> expense. We will be monitoring this closely, and our actions will
> be affected directly by our M&A program. But in any case, we
> have new financial flexibility that will be very valuable to support
> our growth, as well as being highly cost effective.

48.    On November 10, 2004, Viisage filed its Form 10-Q for the third quarter ended

September 26, 2004. In that Form 10-Q, defendants repeated the revenue and earnings figures

discussed in its October 25, 2005 Press Release. In addition, Viisage again stated under Item 4 -

Controls And Procedures:

> (a)    Evaluation of disclosure controls and procedures. Our
> management, with the participation of our Chief Executive Officer,
> or CEO, and Chief Financial officer, or CFO, evaluated the
> effectiveness of our disclosure controls and procedures (as defined
> in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange
> Act) as of September 26, 2004.
>
> * * *
>
> Based on this evaluation, our CEO and CFO concluded that, as of
> September 26, 2004, our disclosure controls and procedures were

(I) designed to ensure that material information relating to us, including our consolidated subsidiaries, is made known to our CEO and CFO by others within those entities, particularly during the period in which this report was being prepared and (2) effective, in that they provide reasonable assurance that information required to be disclosed by us in the reports that we file or submit under the Securities Exchange Act is recorded, processed, summarized, and reported within the time periods specified in the Securities Exchange Commission's rules and forms.

49.    Defendants' statements above concerning Viisage's reported revenues and earnings for the third quarter and the increased guidance for 2004 were materially false and misleading because defendants knowingly or recklessly engaged in improper and premature recognition of revenues as evidenced in part by the 39% increase in day sales outstanding ("DSO") for its receivables -- from 58.5 days at the end of the quarter ended June 27, 2004 to 81.4 days at the end of the quarter ended September 26, 2004. This rapid and dramatic increase in DSOs is a strong indicator that receivables were improperly and/or prematurely recorded thereby artificially inflating revenues. In addition, given Viisage's woefully inadequate internal controls, defendants' statements regarding Viisage's reported revenues, earnings, and internal controls were knowingly, or recklessly, materially false and misleading.

50.    On February 7, 2005, defendants announced that Viisage would meet defendants' previously stated revenue guidance for 2004 and report $66-$67 million in revenues for 2004. However, the Company also stated that it would not meet its previously issued earnings guidance of $11.5 - $12.5 million in EBITA and would instead report only between $8-$9 million in EBITA. In addition, rather than report a $1.5 million loss as previously projected, Viisage anticipated a loss of approximately $7-8 million. The Company claimed that the earnings shortfall was "primarily due to several non-recurring factors, including a non-cash impairment charge of $2 million in connection" with litigation relating to the Georgia DMVS contract.

Defendants also blamed a tax election taken in the fourth quarter but which was related to it acquisition of TDT on February 14, 2004 i.e. the first quarter of 2004. Further, defendants blamed "Sarbanes-Oxley Section 404 Compliance" claiming that "despite work undertaken in prior quarters, Viisage experienced higher than anticipated costs related to its Sarbanes-Oxley compliance efforts" totaling $550,000 in the fourth quarter.

51.    That day defendants Bailey and Aulet held a conference call with analysts in which they attempted to downplay the significance of the earnings shortfall and, at the same time, highlight defendants' claim that Viisage had met its revenue guidance for 2004. Describing the shortfall as a series of one time events, defendant Bailey stated:

> To better help you understand the shortfall, let me provide you some color that will allow you to take some comfort in knowing that this short fall is, in most cases, due to a series of nonrecurring events that do not undermine the long-term fundamentals of our business model. This shortfall can be primarily attributed to three primary buckets -- first, timing of revenues; second, currency translations; and, third, compliance, legal, and other acquisition-integration-related expenses.

52.    Indeed, defendant Bailey claimed that fourth quarter revenues would have been even higher had not certain contracts "slipped" from that quarter and were expected to be realized over the first two quarters of 2005.

53.    The market's reaction was immediate. On February 8, 2005, Viisage's shares plunged as much as 24.3% -- from $7.27 to a low of $5.85 -- on extraordinarily high volume of over 4.6 million shares.

54.    Nonetheless, defendants' statements regarding Viisage's reported revenues for 2004 and expected revenues in the first/second quarters of 2005 were knowingly, or recklessly, materially false and misleading because defendant had improperly and prematurely recognized revenue in the fourth quarter ended December 31, 2004, as evidenced in part by the fact that

accounts receivable day sales outstanding remained at 81 days. In addition, given Viisage's still woefully inadequate internal controls, defendants' statements regarding Viisage's reported revenues and earnings were knowingly, or recklessly, materially false and misleading.

55.     On March 2, 2005, defendants again shocked the market announcing that a "material weakness" existed in Viisage's internal accounting controls. Thus, Viisage's auditor, BDO Seidman LLP, would "issue an adverse opinion with respect to the effectiveness of the Company's internal controls over financial reporting." In addition, Viisage announced that revenues for the first quarter 2005 would be between $15-$17 million -- well below expectations of $19.7-$21 million.

56.     The market's reaction to these latest revelations was again immediate. On March 3, 2005, Viisage's shares plunged as much as 27.2% -- from the close of $5.47 the previous day to a low of $4.30 on March 3, 2005, on extraordinarily high volume of over 6.2 million shares.

57.     The true facts, which were known by defendants but concealed from the investing public during the Class Period, included:

> a. The Company lacked sufficient internal controls, and as a result, the Company's projections and reported results were based upon defective assumptions and/or manipulated facts;
>
> b. Contrary to the defendants' statements to the investing public, the Company was not on track to report a profit in the near future, but was steadily forecasting losses;
>
> c. The Company's information technology systems were materially compromised, which also materially impacted the Company's ability to issue accurate financial statements and projections;

d. Defendants concealed these deficiencies for multiple quarters in order to: (i) delay the cost of implementing the proper system controls and thereby temporarily inflate the Company's net income; and (ii) provide defendants with an pliant system allowing for the reporting of financial results without regard to their accuracy.

58.     As a result of the defendants' false and misleading statements, Viisage's stock traded at inflated levels during the Class Period, which allowed the Company and its top officers and directors to sell more than $39 million worth of Company shares in the August 5, 2004 Secondary Offering. As the true state of the Company's financial condition was revealed, shares of Viisage tumbled 60% from the Class Period high.

## ADDITIONAL SCIENTER ALLEGATIONS

59.     The defendants acted with scienter throughout the Class Period, in that they either had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were readily available to them based upon the following facts.

60.     Defendants' misrepresentations concerning the true circumstances of its conduct in the bidding process enabled Viisage to complete, in August 2004, the secondary offering of approximately 7.5 million shares by which it sold approximately 7.3 million shares and received net proceeds of approximately $37.4 million, Lau, controlled by defendant Berube, realized proceeds of $779,779.00 from the sale of 141,778 shares, Beck realized proceeds of $779,779 from the sale of 141,778 shares of Viisage common stock, and Odeon, controlled by defendant Yon, realized proceeds of $743,363.50 from the sale of 135,157 shares of Viisage stock. Significantly, the proceeds of this offering to Viisage were used, in substantial part, to repay in

full a $15.3 million promissory note issued to defendant Beck and to repay in full a $4.3 million debt obligation to Lau. As represented in Viisage's SEC filings, "as a result of their ownership, both Lau and Mr. Beck have a strong influence on matters requiring approval by our stockholders, including the election of directors and most corporate actions, including mergers and acquisitions."

61.    On October 5, 2004, Viisage completed its acquisition of Imaging Automation, Inc. utilizing 3.9 million shares of its common stock for 77 percent of the $34 million purchase price.

62.    In addition, as of the end of the third quarter, Viisage had incurred indebtedness to Commerce Bank and Trust Company in the amount of $8,384,000. The financial covenants in effect at the time, which had been recently renegotiated, included, *inter* alia, that Viisage **not** report a net loss for 2004 greater than $2.0 million. Through the first two quarters of 2004, however, Viisage had reported a net loss of $1,949,000 -- or a mere $5 1,000 away from violating the covenant. Each defendant therefore knew that it was essential for Viisage to report a profit in the third quarter. Viisage, however, had not reported a profitable quarter in three years.

63.    In addition to $2,302,921.50 in proceeds from sales on the secondary offering, the Individual Defendants reaped proceeds from open market sales of Viisage stock, in the aggregate, of $8,990,315.02, as follows:

a.    Lau, controlled by defendant Berube sold the following shares of Viisage:

| NAME | DATE | SHARES SOLD | PROCEEDS |
|------|------|-------------|----------|
| Lau Acq. Corp. | 11/30/2004 | 50,000 | $394,882.50 |
| Lau Acq. Corp. | 12/1/2004 | 25,000 | $200,000.00 |
| Lau Acq. Corp. | 12/2/2004 | 75,000 | $604,000.00 |

| | | | |
|---|---|---|---|
| Lau Acq. Corp. | 12/7/2004 | 100,000 | $839,000.00 |
| Lau Acq. Corp. | 12/13/2004 | 77,000 | $645,480.00 |
| Lau Acq. Corp. | 12/15/2004 | 25,000 | $206,250.00 |
| **TOTALS** | | **352,000** | **$2,889,612.50** |

      b.     Odeon, controlled by defendant Yon, sold the following shares of Viisage:

| NAME | DATE | SHARES SOLD | PROCEEDS |
|---|---|---|---|
| Odeon | 11/2/2004 | 16,649 | $122,037.17 |
| Odeon | 11/3/2004 | 21,860 | $159,796.60 |
| Odeon | 11/4/2004 | 19,000 | $137,940.00 |
| Odeon | 11/5/2004 | 26,000 | $190,840.00 |
| Odeon | 11/8/2004 | 23,025 | $168,082.50 |
| Odeon | 11/9/2004 | 15,769 | $112,117.59 |
| Odeon | 11/10/2004 | 11,000 | $77,770.00 |
| Odeon | 11/16/2004 | 2,000 | $14,140.00 |
| Odeon | 11/30/2004 | 61,764 | $508,397.40 |
| Odeon | 12/01/2004 | 183,300 | $1,470,066.00 |
| Odeon | 12/02/2004 | 105,190 | $846,779.50 |
| Odeon | 12/08/2004 | 81,507 | $661,836.84 |
| Odeon | 12/09/2004 | 20,409 | $163,476.09 |
| Odeon | 12/13/2004 | 21,000 | $176,400.00 |
| Odeon | 12/14/2004 | 162,000 | $1,341,360.00 |
| **TOTALS** | | **770,473** | **$6,029,002.52** |

      c.     During the Class Period, defendant Levine sold 9,000 shares of Viisage common stock during the Class Period and realized proceeds of $63,000.

      d.     During the Class Period, defendant Reilly sold 10,000 shares of Viisage common stock during the Class Period and realized proceeds of $8,700.

64.    No significant event occurred during the third or fourth quarter that could have led to a massive deterioration in the Company's internal controls as of year-end 2004 that were identified by Viisage on March 2, 2004. Defendants therefore knew or recklessly disregarded that their representation in the Forms 10-Q for the second and third quarters as to the adequacy of those financial controls was false and lacked any reasonable basis. Defendants Levine and Reilly as two of the three members of Viisage's Audit Committee were specifically charged with responsibility for Viisage's internal controls and therefore knew of their gross inadequacy or acted in reckless disregard of that fact.

## NO SAFE HARBOR

65.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. The statements alleged to be false and materially misleading herein relate to then-existing facts and conditions. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying the important then-present factors that could and did cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false or misleading, and/or the forward-looking statement was authorized and/or approved by an executive officer of Viisage who knew that those statements were false when made. Any warnings contained in the press releases and the financial statements quoted herein were generic statements of the kind of risks that affect any high profile company and misleadingly contained no specific factual disclosure of any of the looming problems with Viisage that placed Viisage's profitability and growth at risk.

25

## FIRST CLAIM

### VIOLATION OF SECTION 10(b) OF
### THE EXCHANGE ACT AGAINST AND RULE 10B-5
### PROMULGATED THEREUNDER AGAINST DEFENDANTS VIISAGE, BAILEY,
### AULET, BERUBE, BECK, REILLY, AND LEVINE

66.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67.     During the Class Period, defendants Viisage, Bailey, Aulet, Berube, Beck, Reilly, and Levine carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Viisage securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

68.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Viisage securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants named in this claim are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

69.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Viisage as specified herein.

70.     These defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Viisage value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Viisage and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Viisage securities during the Class Period.

71.     Each of the defendants' primary liability, and controlling person liability, arises from the following facts; (i) the defendants named herein were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his or her responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

72.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants'

material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Viisage's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

73.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Viisage securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Viisage's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Viisage securities during the Class Period at artificially high prices and were damaged thereby.

74.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Viisage was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Viisage securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

75.    By virtue of the foregoing, defendants have violated Section 10(b) of the

Exchange Act, and Rule 10b-5 promulgated thereunder.

76.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and

the other members of the Class suffered damages in connection with their respective purchases

and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### VIOLATION OF SECTION 20(a) OF
### THE EXCHANGE ACT AGAINST BAILEY, AULET, BERUBE, BECK AND YON

77.    Plaintiff repeats and realleges each and every allegation contained above as if

fully set forth herein.

78.    Defendants Bailey, Aulet, Berube, Beck and Yon acted as controlling persons of

Viisage within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of

their high-level positions, and their ownership and contractual rights, participation in and/or

awareness of the Company's operations and/or intimate knowledge of the false financial statements

filed by the Company with the SEC: and disseminated to the investing public, defendants had the

power to influence and control and did influence and control, directly or indirectly, the decision-

malting of the Company, including the content and dissemination of the various statements which

Plaintiff contend are false and misleading. The defendants named in this claim were provided with

or had unlimited access to copies of the Company's reports, press releases, public filings and other

statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were

issued and had the ability to prevent the issuance of the statements or cause the statements to be

corrected.

79.    In particular, each of these defendants had direct and supervisory involvement in

the day-to-day operations of the Company and, therefore, is presumed to have had the power to

control or influence the particular transactions giving rise to the securities violations as alleged

herein, and exercised the same.

80.    As set forth above, Viisage and the defendants named in this claim each violated

Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue

of their positions as controlling persons, the Individual Defendants are liable pursuant to Section

20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct,

Plaintiff and other members of the Class suffered damages in connection with their purchases of the

Company's securities during the Class Period.

## THIRD CLAIM

### FOR VIOLATIONS OF SECTION 11 OF THE SECURITIES ACT AGAINST ALL DEFENDANTS

81.    Plaintiff repeats and realleges the allegations set forth in paragraph 1-58 as though

fully set forth herein.

82.    This Claim is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §

77k, on behalf of the Class against all defendants.

83.    The Registration Statement for the August 5, 2004 Secondary Offering was

inaccurate and misleading, contained untrue statements of material facts, omitted to state other

facts necessary to make the statements made not misleading, and concealed and failed adequately

to disclose material facts as described above.

84.    Viisage is the registrant for the August 5, 2004 Secondary Offering.  The

defendants named herein were responsible for the contents and dissemination of the Registration

Statement and the Prospectus.

85.    As issuer of the shares, Viisage is strictly liable to plaintiff and the Class for the

misstatements and omissions.

86.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

87.     Defendants issued, caused to be issued and participated in the issuance of materially false and misleading written statements to the investing public that were contained in the Prospectus, which misrepresented or failed to disclose, *inter alia*, the facts set forth above. By reasons of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

88.     Plaintiff Turnberry acquired Viisage shares traceable to and in reliance on, the Registration Statement.

89.     Plaintiff and the Class have sustained damages. The value of Viisage stock has declined substantially subsequent to and due to defendants' violations.

90.     At the times it purchased Viisage shares, plaintiffs and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to August 6, 2004. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this Complaint. Less than three years have elapsed between the time that the securities upon which this Claim is brought were offered to the public and the time plaintiff filed this Complaint.

## FOURTH CLAIM

### FOR VIOLATIONS OF SECTION 12(A)(2) OF THE SECURITIES ACT AGAINST ALL DEFENDANTS BAILEY, AULET, BERUBE, BECK AND YON

91.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-58 and 81-90 as though fully set forth herein.

92.     This Claim is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of the Class, against defendants Bailey, Aulet, Berube, Beck and Yon.

93.     Defendants named in this claim were sellers and offerors and/or solicitors of purchasers of the shares offered pursuant to the Prospectus.

94.     The Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts. The defendants' actions of solicitation included signing the Prospectus participating in the preparation of the false and misleading Prospectus.

95.     Defendants owed to the purchasers of Viisage stock, including plaintiff and other class members, the duty to make reasonable and diligent investigation of the statements contained in the August 5, 2004 Secondary Offering materials, including the Prospectus contained therein, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the August 5, 2004 Secondary Offering materials as set forth above.

96.     Plaintiff and other members of the Class purchased or otherwise acquired Viisage stock pursuant to and/or traceable to the defective Prospectus. Plaintiff did not know, or in the

32

exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Prospectus.

97.    Plaintiff, individually and representatively, hereby offers to tender to defendants those securities that plaintiff and other Class members continue to own, on behalf of all members of the Class who continue to own such securities, in return for the consideration paid for those securities together with interest thereon. Class members who have sold their Viisage shares are entitled to rescissory damages.

98.    By reason of the conduct alleged herein, these defendants violated, and/or controlled a person who violated, Section 12(a)(2) of the Securities Act. Accordingly, plaintiff and members of the Class who hold Viisage common stock purchased in the August 5, 2004 Secondary Offering have the right to rescind and recover the consideration paid for their Viisage shares and hereby elect to rescind and tender their Viisage common stock to the defendants sued herein. Plaintiff and Class members who have sold their Viisage common stock are entitled to rescissory damages.

## FIFTH CLAIM

### FOR VIOLATIONS OF SECTION 15 OF THE SECURITIES ACT AGAINST DEFENDANTS BAILEY, AULET, BERUBE, BECK AND YON

99.    Plaintiff repeats and realleges the allegations set forth above in paragraphs 1-58, 81-98 as though fully set forth herein.

100.    This Claim is brought pursuant to Section 15 of the Securities Act against defendants Bailey, Aulet, Berube, Beck and Yon.

101.    Each of the defendants named in this claim were control persons of Viisage by virtue of his/her position as a director and/or senior officer of Viisage. The defendants each had

33

a series of direct and/or personal relationships with other directors and/or officers and/or major shareholders of Viisage.

102. Each of the defendants named herein were culpable participants in the violations of Section 11 and 12(a)(2) of the Securities Act alleged in Claims III and IV above, based on their having signed the Registration Statement and having otherwise participated in the process which allowed the August 5, 2004 Secondary Offering to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, pray for relief and judgment, as follows:

A. Declaring this action to be a proper class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

B. Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

C. Awarding Plaintiff and the members of the Class pre-judgment and postjudgment interest, as well as reasonable attorneys' fees, expert witness fees and other costs; and

D. Awarding Plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements.; and

E. Awarding such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: Boston, Massachusetts
      April 11, 2005

                                    **BERMAN DEVALERIO PEASE**
                                    **TABACCO BURT & PUCILLO**

                                    By:_____
                                    Leslie R. Stern BBO# 631201
                                    One Liberty Square
                                    Boston, MA 02109
                                    Phone: (617) 542-8300


                                    Stephen D. Oestreich
                                    William W. Wickersham
                                    **ENTWISTLE & CAPPUCCI LLP**
                                    299 Park Avenue
                                    New York, NY 10171
                                    (212) 894-7200

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Jeffrey Schnipper declares the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      My name is Jeffrey Schnipper and I am Sole Proprietor of Turnberry Asset Management ("Turnberry").

2.      I am duly authorized to designate Entwistle & Cappucci LLP as counsel for Turnberry in this action for all purposes, to pursue appointment Turnberry as lead plaintiff in this matter, and to seek approval of Turnberry's selection of Entwistle & Cappucci LLP as lead counsel and Berman DeValerio Pease Tabacco Burt & Pucillo as liaison counsel.

3.      I have reviewed a copy of the complaint filed in the action and have been advised that additional complaints based on the same operative facts have been filed.

4.      Turnberry did not acquire any of the relevant securities at the direction of plaintiff's counsel or in order to participate in any private action under the federal securities laws.

5.      Turnberry is willing to serve as a lead plaintiff in this action and it recognizes its duties as lead plaintiff to act on behalf of other class members in monitoring and directing the action, and, if necessary, testifying at deposition and trial.

6.      Turnberry will not accept any payment for serving as a representative party beyond its *pro rata* share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the court pursuant to law.

7.      Turnberry has not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years.

8.  Turnberry's transactions during the proposed Class Period, May 3, 2005 to March 2, 2005, inclusive, in Viisage Technology, Inc. securities, which are the subject of this litigation, are described in the chart attached hereto as Schedule A.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this __12th__ day of April 2005

By: _____
Jeffrey Schnipper

2

## SCHEDULE A  FOR TURNBERRY ASSET MANAGEMENT

| Trade Date | Symbol | Activity | Quantity | USD Price | Net Amt/Net Notional Value |
|---|---|---|---|---|---|
| 6/23/2004 | VISG | Buy | 1,900 | $8.73 | $16,587.00 |
| 6/23/2004 | VISG | Buy | 100 | $8.73 | $873.00 |
| 6/23/2004 | VISG | Buy | 200 | $8.73 | $1,746.00 |
| 6/23/2004 | VISG | Buy | 100 | $8.73 | $873.00 |
| 6/23/2004 | VISG | Buy | 100 | $8.73 | $873.00 |
| 6/23/2004 | VISG | Buy | 600 | $8.73 | $5,238.00 |
| 7/1/2004 | VISG | Buy | 100 | $8.31 | $831.00 |
| 7/1/2004 | VISG | Buy | 300 | $8.31 | $2,493.00 |
| 7/1/2004 | VISG | Buy | 400 | $8.31 | $3,324.00 |
| 7/1/2004 | VISG | Buy | 100 | $8.31 | $831.00 |
| 7/1/2004 | VISG | Buy | 100 | $8.31 | $831.00 |
| 7/1/2004 | VISG | Buy | 500 | $8.35 | $4,175.00 |
| 7/1/2004 | VISG | Buy | 500 | $8.35 | $4,175.00 |
| 7/1/2004 | VISG | Buy | 200 | $8.35 | $1,670.00 |
| 7/1/2004 | VISG | Buy | 200 | $8.35 | $1,670.00 |
| 7/1/2004 | VISG | Buy | 100 | $8.35 | $835.00 |
| 7/1/2004 | VISG | Buy | 100 | $8.35 | $835.00 |
| 7/1/2004 | VISG | Buy | 400 | $8.34 | $3,336.00 |
| 7/8/2004 | VISG | Buy | 100 | $7.63 | $763.00 |
| 7/8/2004 | VISG | Buy | 100 | $7.63 | $763.00 |
| 7/8/2004 | VISG | Buy | 100 | $7.63 | $763.00 |
| 7/8/2004 | VISG | Buy | 400 | $7.63 | $3,052.00 |
| 7/8/2004 | VISG | Buy | 900 | $7.63 | $6,867.00 |
| 7/8/2004 | VISG | Buy | 100 | $7.63 | $763.00 |
| 7/8/2004 | VISG | Buy | 100 | $7.63 | $763.00 |
| 7/8/2004 | VISG | Buy | 200 | $7.62 | $1,524.00 |
| 7/28/2004 | VISG | Buy | 100 | $6.30 | $630.00 |
| 7/28/2004 | VISG | Buy | 700 | $6.30 | $4,410.00 |
| 7/28/2004 | VISG | Buy | 100 | $6.30 | $630.00 |
| 7/28/2004 | VISG | Buy | 500 | $6.30 | $3,150.00 |
| 7/28/2004 | VISG | Buy | 100 | $6.30 | $630.00 |
| 7/28/2004 | VISG | Buy | 100 | $6.30 | $630.00 |
| 8/5/2004 | VISG | Buy | 5,000 | $5.50 | $27,500.00 |
| 8/5/2004 | VISG | Buy | 20,000 | $5.50 | $110,000.00 |
| 8/6/2004 | VISG | Buy | 500 | $5.55 | $2,775.00 |
| 8/6/2004 | VISG | Buy | 500 | $5.55 | $2,775.00 |
| 8/6/2004 | VISG | Buy | 500 | $5.55 | $2,775.00 |
| 8/6/2004 | VISG | Buy | 1,500 | $5.43 | $8,145.00 |
| 8/6/2004 | VISG | Buy | 350 | $5.57 | $1,949.50 |
| 8/9/2004 | VISG | Buy | 10,000 | $5.59 | $55,850.00 |
| 8/12/2004 | VISG | Buy | 700 | $5.34 | $3,738.00 |
| 8/12/2004 | VISG | Buy | 300 | $5.34 | $1,602.00 |
| 8/12/2004 | VISG | Buy | 500 | $5.35 | $2,675.00 |
| 8/12/2004 | VISG | Buy | 100 | $5.35 | $535.00 |
| 8/12/2004 | VISG | Buy | 100 | $5.35 | $535.00 |
| 8/12/2004 | VISG | Buy | 300 | $5.32 | $1,596.00 |
| 8/25/2004 | VISG | Buy | 800 | $6.53 | $5,224.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 8/25/2004 | VISG | Buy | 1,000 | $6.53 | $6,530.00 |
| 8/25/2004 | VISG | Buy | 700 | $6.54 | $4,578.00 |
| 8/26/2004 | VISG | Buy | 311 | $6.36 | $1,977.96 |
| 8/26/2004 | VISG | Buy | 100 | $6.36 | $636.00 |
| 8/26/2004 | VISG | Buy | 100 | $6.36 | $636.00 |
| 8/26/2004 | VISG | Buy | 400 | $6.36 | $2,544.00 |
| 8/26/2004 | VISG | Buy | 566 | $6.36 | $3,599.76 |
| 8/26/2004 | VISG | Buy | 23 | $6.36 | $146.28 |
| 8/26/2004 | VISG | Buy | 1,000 | $6.38 | $6,380.00 |
| 8/30/2004 | VISG | Buy | 100 | $6.48 | $648.00 |
| 8/30/2004 | VISG | Buy | 200 | $6.48 | $1,296.00 |
| 8/30/2004 | VISG | Buy | 200 | $6.48 | $1,296.00 |
| 8/30/2004 | VISG | Buy | 500 | $6.48 | $3,240.00 |
| 8/30/2004 | VISG | Buy | 1,000 | $6.47 | $6,470.00 |
| 8/31/2004 | VISG | Buy | 100 | $6.36 | $636.00 |
| 8/31/2004 | VISG | Buy | 500 | $6.36 | $3,180.00 |
| 8/31/2004 | VISG | Buy | 400 | $6.36 | $2,544.00 |
| 9/9/2004 | VISG | Buy | 100 | $6.77 | $677.00 |
| 9/29/2004 | VISG | Buy | 300 | $6.02 | $1,806.00 |
| 9/29/2004 | VISG | Buy | 700 | $6.03 | $4,221.00 |
| 9/29/2004 | VISG | Buy | 1,000 | $6.05 | $6,050.00 |
| 9/29/2004 | VISG | Buy | 2,000 | $6.08 | $12,160.00 |
| 9/29/2004 | VISG | Buy | 900 | $6.09 | $5,481.00 |
| 9/29/2004 | VISG | Buy | 2,000 | $6.17 | $12,340.00 |
| 10/6/2004 | VISG | Buy | 400 | $6.34 | $2,536.00 |
| 10/6/2004 | VISG | Buy | 100 | $6.34 | $634.00 |
| 10/6/2004 | VISG | Buy | 500 | $6.34 | $3,170.00 |
| 10/6/2004 | VISG | Buy | 1,000 | $6.36 | $6,360.00 |
| 10/6/2004 | VISG | Buy | 700 | $6.41 | $4,487.00 |
| 10/6/2004 | VISG | Buy | 200 | $6.42 | $1,284.00 |
| 10/6/2004 | VISG | Buy | 100 | $6.54 | $654.00 |
| 10/8/2004 | VISG | Buy | 1,000 | $6.64 | $6,640.00 |
| 10/12/2004 | VISG | Buy | 400 | $6.70 | $2,680.00 |
| 10/12/2004 | VISG | Buy | 500 | $6.70 | $3,350.00 |
| 10/12/2004 | VISG | Buy | 100 | $6.70 | $670.00 |
| 10/13/2004 | VISG | Buy | 100 | $6.51 | $651.00 |
| 10/13/2004 | VISG | Buy | 900 | $6.54 | $5,886.00 |
| 10/19/2004 | VISG | Buy | 100 | $6.72 | $672.00 |
| 10/22/2004 | VISG | Buy | 100 | $6.86 | $686.00 |
| 11/5/2004 | VISG | Buy | 34 | $7.28 | $247.52 |
| 11/5/2004 | VISG | Buy | 100 | $7.28 | $728.00 |
| 11/5/2004 | VISG | Buy | 466 | $7.28 | $3,392.48 |
| 11/5/2004 | VISG | Buy | 300 | $7.28 | $2,184.00 |
| 11/5/2004 | VISG | Buy | 100 | $7.26 | $726.00 |
| 11/5/2004 | VISG | Buy | 100 | $7.45 | $745.00 |
| 11/15/2004 | VISG | Buy | 100 | $6.84 | $684.00 |
| 11/16/2004 | VISG | Buy | 800 | $6.98 | $5,584.00 |
| 11/22/2004 | VISG | Buy | 500 | $6.70 | $3,350.00 |
| 11/22/2004 | VISG | Buy | 400 | $6.70 | $2,680.00 |
| 11/22/2004 | VISG | Buy | 100 | $6.70 | $670.00 |
| 11/22/2004 | VISG | Buy | 1,000 | $6.69 | $6,690.00 |
| 11/24/2004 | VISG | Buy | 2,000 | $6.86 | $13,720.00 |

| | | | | | |
|---|---|---|---|---|---|
| 11/26/2004 | VISG | Buy | 500 | $7.03 | $3,515.00 |
| 11/26/2004 | VISG | Buy | 100 | $7.03 | $703.00 |
| 11/26/2004 | VISG | Buy | 121 | $7.03 | $850.63 |
| 11/26/2004 | VISG | Buy | 100 | $7.03 | $703.00 |
| 11/26/2004 | VISG | Buy | 500 | $7.03 | $3,515.00 |
| 11/26/2004 | VISG | Buy | 100 | $7.03 | $703.00 |
| 11/26/2004 | VISG | Buy | 100 | $7.03 | $703.00 |
| 11/26/2004 | VISG | Buy | 100 | $7.03 | $703.00 |
| 11/26/2004 | VISG | Buy | 300 | $7.03 | $2,109.00 |
| 11/26/2004 | VISG | Buy | 79 | $7.03 | $555.37 |
| 12/1/2004 | VISG | Buy | 500 | $8.02 | $4,010.00 |
| 12/1/2004 | VISG | Buy | 400 | $8.02 | $3,208.00 |
| 12/1/2004 | VISG | Buy | 300 | $8.02 | $2,406.00 |
| 12/1/2004 | VISG | Buy | 200 | $8.02 | $1,604.00 |
| 12/1/2004 | VISG | Buy | 100 | $8.02 | $802.00 |
| 12/1/2004 | VISG | Buy | 100 | $8.02 | $802.00 |
| 12/1/2004 | VISG | Buy | 500 | $8.02 | $4,010.00 |
| 12/1/2004 | VISG | Buy | 500 | $8.02 | $4,010.00 |
| 12/1/2004 | VISG | Buy | 200 | $8.00 | $1,600.00 |
| 12/1/2004 | VISG | Buy | 50 | $8.03 | $401.50 |
| 12/3/2004 | VISG | Buy | 200 | $8.04 | $1,608.00 |
| 12/6/2004 | VISG | Buy | 1,900 | $8.08 | $15,352.00 |
| 12/6/2004 | VISG | Buy | 100 | $8.13 | $813.00 |
| 12/7/2004 | VISG | Buy | 900 | $8.07 | $7,263.00 |
| 12/8/2004 | VISG | Buy | 500 | $8.10 | $4,050.00 |
| 12/8/2004 | VISG | Buy | 500 | $8.10 | $4,050.00 |
| 12/8/2004 | VISG | Buy | 1,000 | $7.86 | $7,860.00 |
| 12/8/2004 | VISG | Buy | 1,000 | $8.06 | $8,060.00 |
| 12/14/2004 | VISG | Buy | 50 | $8.16 | $408.00 |
| 12/14/2004 | VISG | Buy | 500 | $8.16 | $4,080.00 |
| 12/14/2004 | VISG | Buy | 200 | $8.16 | $1,632.00 |
| 12/14/2004 | VISG | Buy | 200 | $8.16 | $1,632.00 |
| 12/14/2004 | VISG | Buy | 50 | $8.14 | $407.00 |
| 12/14/2004 | VISG | Buy | 1,000 | $8.40 | $8,400.00 |
| 12/14/2004 | VISG | Buy | 1,000 | $8.45 | $8,450.00 |
| 12/27/2004 | VISG | Buy | 5,000 | $8.52 | $42,600.00 |
| 1/4/2005 | VISG | Buy | 500 | $8.83 | $4,415.00 |
| 1/4/2005 | VISG | Buy | 100 | $8.83 | $883.00 |
| 1/4/2005 | VISG | Buy | 280 | $8.83 | $2,472.40 |
| 1/4/2005 | VISG | Buy | 200 | $8.83 | $1,766.00 |
| 1/4/2005 | VISG | Buy | 1,000 | $8.78 | $8,780.00 |
| 1/4/2005 | VISG | Buy | 120 | $8.80 | $1,056.00 |
| 1/5/2005 | VISG | Buy | 1,000 | $8.38 | $8,380.00 |
| 1/5/2005 | VISG | Buy | 1,000 | $8.56 | $8,560.00 |
| 1/5/2005 | VISG | Buy | 500 | $8.61 | $4,305.00 |
| 1/5/2005 | VISG | Buy | 1,000 | $8.62 | $8,620.00 |
| 1/5/2005 | VISG | Buy | 1,000 | $8.66 | $8,660.00 |
| 1/5/2005 | VISG | Buy | 500 | $8.69 | $4,345.00 |
| 1/5/2005 | VISG | Buy | 5,000 | $8.55 | $42,750.00 |
| 1/12/2005 | VISG | Buy | 1,000 | $7.78 | $7,780.00 |
| 1/14/2005 | VISG | Buy | 148 | $7.84 | $1,160.32 |
| 1/14/2005 | VISG | Buy | 86 | $7.84 | $674.24 |

| 1/14/2005 | VISG | Buy | 100 | $7.84 | $784.00 |
|---|---|---|---|---|---|
| 1/14/2005 | VISG | Buy | 366 | $7.84 | $2,869.44 |
| 1/14/2005 | VISG | Buy | 100 | $7.84 | $784.00 |
| 1/14/2005 | VISG | Buy | 100 | $7.98 | $798.00 |
| 1/14/2005 | VISG | Buy | 100 | $8.01 | $801.00 |
| 1/14/2005 | VISG | Buy | 100 | $8.05 | $805.00 |
| 1/18/2005 | VISG | Buy | 300 | $7.59 | $2,277.00 |
| 1/18/2005 | VISG | Buy | 100 | $7.59 | $759.00 |
| 1/18/2005 | VISG | Buy | 100 | $7.59 | $759.00 |
| 1/18/2005 | VISG | Buy | 100 | $7.59 | $759.00 |
| 1/18/2005 | VISG | Buy | 300 | $7.59 | $2,277.00 |
| 1/19/2005 | VISG | Buy | 900 | $7.54 | $6,786.00 |
| 1/19/2005 | VISG | Buy | 100 | $7.54 | $754.00 |
| 1/19/2005 | VISG | Buy | 500 | $7.54 | $3,770.00 |
| 1/19/2005 | VISG | Buy | 300 | $7.54 | $2,262.00 |
| 1/19/2005 | VISG | Buy | 200 | $7.54 | $1,508.00 |
| 1/20/2005 | VISG | Buy | 100 | $7.42 | $742.00 |
| 1/20/2005 | VISG | Buy | 100 | $7.46 | $746.00 |
| 1/20/2005 | VISG | Buy | 500 | $7.47 | $3,735.00 |
| 1/20/2005 | VISG | Buy | 200 | $7.53 | $1,506.00 |
| 1/20/2005 | VISG | Buy | 300 | $7.54 | $2,262.00 |
| 1/24/2005 | VISG | Buy | 100 | $7.44 | $744.00 |
| 1/25/2005 | VISG | Buy | 1,000 | $7.13 | $7,130.00 |
| 1/25/2005 | VISG | Buy | 100 | $7.19 | $719.00 |
| 1/25/2005 | VISG | Buy | 100 | $7.19 | $719.00 |
| 1/25/2005 | VISG | Buy | 300 | $7.19 | $2,157.00 |
| 1/25/2005 | VISG | Buy | 500 | $7.19 | $3,595.00 |
| 1/25/2005 | VISG | Buy | 100 | $7.22 | $722.00 |
| 1/25/2005 | VISG | Buy | 900 | $7.22 | $6,498.00 |
| 1/26/2005 | VISG | Buy | 1,000 | $6.96 | $6,960.00 |
| 2/4/2005 | VISG | Buy | 100 | $7.41 | $741.00 |
| 2/4/2005 | VISG | Buy | 100 | $7.46 | $746.00 |
| 2/7/2005 | VISG | Buy | 100 | $7.47 | $747.00 |
| 2/8/2005 | VISG | Buy | 400 | $6.19 | $2,476.00 |
| 2/8/2005 | VISG | Buy | 500 | $6.20 | $3,100.00 |
| 2/8/2005 | VISG | Buy | 1,000 | $6.08 | $6,080.00 |
| 2/8/2005 | VISG | Buy | 400 | $6.00 | $2,400.00 |
| 2/8/2005 | VISG | Buy | 255 | $6.00 | $1,530.00 |
| 2/8/2005 | VISG | Buy | 200 | $6.00 | $1,200.00 |
| 2/8/2005 | VISG | Buy | 100 | $6.00 | $600.00 |
| 2/8/2005 | VISG | Buy | 37 | $6.00 | $222.00 |
| 2/8/2005 | VISG | Buy | 8 | $6.00 | $48.00 |
| 2/8/2005 | VISG | Buy | 100 | $5.97 | $597.00 |
| 2/8/2005 | VISG | Buy | 500 | $5.97 | $2,985.00 |
| 2/8/2005 | VISG | Buy | 200 | $5.97 | $1,194.00 |
| 2/9/2005 | VISG | Buy | 1,000 | $5.84 | $5,840.00 |
| 2/11/2005 | VISG | Buy | 300 | $5.83 | $1,749.00 |
| 2/11/2005 | VISG | Buy | 200 | $5.83 | $1,166.00 |
| 2/11/2005 | VISG | Buy | 100 | $5.83 | $583.00 |
| 2/11/2005 | VISG | Buy | 400 | $5.83 | $2,332.00 |
| 2/15/2005 | VISG | Buy | 400 | $5.76 | $2,304.00 |
| 2/15/2005 | VISG | Buy | 600 | $5.76 | $3,456.00 |

| Date | Symbol | Action | Quantity | Price | Amount |
|---|---|---|---|---|---|
| 2/16/2005 | VISG | Buy | 2,000 | $5.77 | $11,540.00 |
| 2/16/2005 | VISG | Buy | 1,500 | $5.76 | $8,640.00 |
| 2/16/2005 | VISG | Buy | 712 | $5.76 | $4,101.12 |
| 2/16/2005 | VISG | Buy | 288 | $5.76 | $1,658.88 |
| 2/17/2005 | VISG | Buy | 100 | $5.77 | $577.00 |
| 2/17/2005 | VISG | Buy | 100 | $5.79 | $579.00 |
| 2/17/2005 | VISG | Buy | 2,040 | $5.66 | $11,546.40 |
| 2/18/2005 | VISG | Buy | 2 | $5.79 | $11.58 |
| 2/18/2005 | VISG | Buy | 500 | $5.81 | $2,905.00 |
| 2/18/2005 | VISG | Buy | 300 | $5.81 | $1,743.00 |
| 2/18/2005 | VISG | Buy | 200 | $5.81 | $1,162.00 |
| 2/23/2005 | VISG | Buy | 100 | $6.02 | $602.00 |
| 2/24/2005 | VISG | Buy | 200 | $5.73 | $1,146.00 |
| 2/24/2005 | VISG | Buy | 500 | $5.73 | $2,865.00 |
| 2/24/2005 | VISG | Buy | 200 | $5.73 | $1,146.00 |
| 2/28/2005 | VISG | Buy | 1,000 | $5.87 | $5,870.00 |
| 2/28/2005 | VISG | Buy | 200 | $5.87 | $1,174.00 |
| 2/28/2005 | VISG | Buy | 500 | $5.87 | $2,935.00 |
| 2/28/2005 | VISG | Buy | 200 | $5.87 | $1,174.00 |
| 2/28/2005 | VISG | Buy | 100 | $5.87 | $587.00 |
| 2/28/2005 | VISG | Buy | 100 | $5.81 | $581.00 |
| 2/28/2005 | VISG | Buy | 500 | $5.81 | $2,905.00 |
| 2/28/2005 | VISG | Buy | 100 | $5.81 | $581.00 |
| 2/28/2005 | VISG | Buy | 226 | $5.81 | $1,313.06 |
| 2/28/2005 | VISG | Buy | 74 | $5.81 | $429.94 |
| 2/28/2005 | VISG | Buy | 87 | $5.80 | $504.60 |
| 2/28/2005 | VISG | Buy | 73 | $5.80 | $423.40 |
| 2/28/2005 | VISG | Buy | 100 | $5.80 | $580.00 |
| 3/1/2005 | VISG | Buy | 540 | $5.88 | $3,175.20 |
| 3/1/2005 | VISG | Buy | 100 | $5.88 | $588.00 |
| 3/2/2005 | VISG | Buy | 100 | $5.62 | $562.00 |
| 3/2/2005 | VISG | Buy | 200 | $5.62 | $1,124.00 |
| 3/2/2005 | VISG | Buy | 100 | $5.62 | $562.00 |
| 3/2/2005 | VISG | Buy | 100 | $5.62 | $562.00 |
| 3/2/2005 | VISG | Buy | 87 | $5.62 | $488.94 |
| 3/2/2005 | VISG | Buy | 100 | $5.62 | $562.00 |
| 3/2/2005 | VISG | Buy | 313 | $5.62 | $1,759.06 |
| 3/2/2005 | VISG | Buy | 400 | $5.48 | $2,192.00 |
| 3/2/2005 | VISG | Buy | 600 | $5.48 | $3,288.00 |
| 6/25/2004 | VISG | Sell | 3,000 | $9.15 | $27,450.00 |
| 7/27/2004 | VISG | Sell | 1,500 | $6.75 | $10,125.00 |
| 7/27/2004 | VISG | Sell | 466 | $6.85 | $3,192.10 |
| 8/2/2004 | VISG | Sell | 100 | $6.83 | $683.00 |
| 8/2/2004 | VISG | Sell | 300 | $6.83 | $2,049.00 |
| 8/2/2004 | VISG | Sell | 857 | $6.85 | $5,870.45 |
| 8/2/2004 | VISG | Sell | 43 | $6.85 | $294.55 |
| 8/2/2004 | VISG | Sell | 100 | $6.85 | $685.00 |
| 8/2/2004 | VISG | Sell | 300 | $6.86 | $2,058.00 |
| 8/2/2004 | VISG | Sell | 300 | $6.86 | $2,058.00 |

| | | | | | |
|---|---|---|---|---|---|
| 8/2/2004 | VISG | Sell | 1,000 | $6.80 | $6,800.00 |
| 8/3/2004 | VISG | Sell | 1,500 | $6.86 | $10,290.00 |
| 8/3/2004 | VISG | Sell | 500 | $6.87 | $3,435.00 |
| 8/3/2004 | VISG | Sell | 400 | $7.20 | $2,880.00 |
| 8/3/2004 | VISG | Sell | 165 | $7.21 | $1,189.65 |
| 8/3/2004 | VISG | Sell | 1,489 | $7.23 | $10,765.47 |
| 8/4/2004 | VISG | Sell | 118 | $6.27 | $739.86 |
| 8/4/2004 | VISG | Sell | 100 | $6.27 | $627.00 |
| 8/4/2004 | VISG | Sell | 800 | $6.27 | $5,016.00 |
| 8/4/2004 | VISG | Sell | 382 | $6.27 | $2,395.14 |
| 8/4/2004 | VISG | Sell | 100 | $6.27 | $627.00 |
| 8/4/2004 | VISG | Sell | 500 | $6.27 | $3,135.00 |
| 8/4/2004 | VISG | Sell | 234 | $6.50 | $1,521.00 |
| 8/4/2004 | VISG | Sell | 1,400 | $6.50 | $9,100.00 |
| 8/4/2004 | VISG | Sell | 200 | $6.50 | $1,300.00 |
| 8/4/2004 | VISG | Sell | 166 | $6.50 | $1,079.00 |
| 8/4/2004 | VISG | Sell | 1,700 | $6.59 | $11,203.00 |
| 8/4/2004 | VISG | Sell | 100 | $6.60 | $660.00 |
| 8/4/2004 | VISG | Sell | 100 | $6.61 | $661.00 |
| 8/4/2004 | VISG | Sell | 100 | $6.63 | $663.00 |
| 8/4/2004 | VISG | Sell | 300 | $6.06 | $1,818.00 |
| 8/4/2004 | VISG | Sell | 50 | $6.09 | $304.50 |
| 8/5/2004 | VISG | Sell | 4,500 | $5.70 | $25,650.00 |
| 8/5/2004 | VISG | Sell | 500 | $5.71 | $2,855.00 |
| 8/10/2004 | VISG | Sell | 3,000 | $5.67 | $17,010.00 |
| 8/16/2004 | VISG | Sell | 2,000 | $5.50 | $11,000.00 |
| 8/17/2004 | VISG | Sell | 500 | $5.82 | $2,910.00 |
| 8/17/2004 | VISG | Sell | 500 | $5.82 | $2,910.00 |
| 8/17/2004 | VISG | Sell | 100 | $5.89 | $589.00 |
| 8/17/2004 | VISG | Sell | 300 | $5.89 | $1,767.00 |
| 8/17/2004 | VISG | Sell | 100 | $5.89 | $589.00 |
| 8/17/2004 | VISG | Sell | 500 | $5.89 | $2,945.00 |
| 8/18/2004 | VISG | Sell | 2,000 | $6.05 | $12,100.00 |
| 8/23/2004 | VISG | Sell | 2,000 | $6.28 | $12,560.00 |
| 9/1/2004 | VISG | Sell | 1,000 | $6.71 | $6,710.00 |
| 9/1/2004 | VISG | Sell | 1,000 | $6.81 | $6,810.00 |
| 9/7/2004 | VISG | Sell | 500 | $6.61 | $3,305.00 |
| 9/7/2004 | VISG | Sell | 500 | $6.61 | $3,305.00 |
| 9/7/2004 | VISG | Sell | 500 | $6.61 | $3,305.00 |
| 9/7/2004 | VISG | Sell | 500 | $6.61 | $3,305.00 |
| 9/28/2004 | VISG | Sell | 2,000 | $6.78 | $13,560.00 |
| 10/4/2004 | VISG | Sell | 1,500 | $6.13 | $9,195.00 |
| 10/5/2004 | VISG | Sell | 1,500 | $6.19 | $9,285.00 |
| 10/5/2004 | VISG | Sell | 2,000 | $6.38 | $12,760.00 |
| 10/7/2004 | VISG | Sell | 1,000 | $6.72 | $6,720.00 |
| 10/21/2004 | VISG | Sell | 100 | $6.92 | $692.00 |
| 10/21/2004 | VISG | Sell | 500 | $6.92 | $3,460.00 |
| 10/21/2004 | VISG | Sell | 500 | $6.92 | $3,460.00 |
| 10/21/2004 | VISG | Sell | 216 | $6.93 | $1,496.88 |
| 10/21/2004 | VISG | Sell | 100 | $6.93 | $693.00 |
| 10/21/2004 | VISG | Sell | 500 | $6.93 | $3,465.00 |
| 10/21/2004 | VISG | Sell | 484 | $6.93 | $3,354.12 |

| | | | | | |
|---|---|---|---|---|---|
| 10/21/2004 | VISG | Sell | 100 | $6.93 | $693.00 |
| 10/21/2004 | VISG | Sell | 200 | $6.93 | $1,386.00 |
| 10/21/2004 | VISG | Sell | 400 | $6.93 | $2,772.00 |
| 10/21/2004 | VISG | Sell | 500 | $6.93 | $3,465.00 |
| 10/25/2004 | VISG | Sell | 2,500 | $7.05 | $17,625.00 |
| 10/26/2004 | VISG | Sell | 2,500 | $7.20 | $18,000.00 |
| 10/27/2004 | VISG | Sell | 500 | $7.35 | $3,675.00 |
| 10/27/2004 | VISG | Sell | 100 | $7.35 | $735.00 |
| 10/27/2004 | VISG | Sell | 500 | $7.35 | $3,675.00 |
| 10/27/2004 | VISG | Sell | 200 | $7.42 | $1,484.00 |
| 10/27/2004 | VISG | Sell | 100 | $7.42 | $742.00 |
| 10/27/2004 | VISG | Sell | 100 | $7.42 | $742.00 |
| 10/27/2004 | VISG | Sell | 100 | $7.42 | $742.00 |
| 11/4/2004 | VISG | Sell | 1,000 | $7.49 | $7,490.00 |
| 11/30/2004 | VISG | Sell | 350 | $8.05 | $2,817.50 |
| 11/30/2004 | VISG | Sell | 500 | $8.05 | $4,025.00 |
| 11/30/2004 | VISG | Sell | 1,000 | $8.06 | $8,060.00 |
| 12/2/2004 | VISG | Sell | 100 | $8.24 | $824.00 |
| 12/7/2004 | VISG | Sell | 500 | $8.40 | $4,200.00 |
| 12/7/2004 | VISG | Sell | 500 | $8.40 | $4,200.00 |
| 12/7/2004 | VISG | Sell | 400 | $8.40 | $3,360.00 |
| 12/7/2004 | VISG | Sell | 100 | $8.40 | $840.00 |
| 12/7/2004 | VISG | Sell | 500 | $8.40 | $4,200.00 |
| 12/7/2004 | VISG | Sell | 1,000 | $8.65 | $8,650.00 |
| 12/9/2004 | VISG | Sell | 1,000 | $8.05 | $8,050.00 |
| 12/13/2004 | VISG | Sell | 900 | $8.42 | $7,578.00 |
| 12/13/2004 | VISG | Sell | 100 | $8.42 | $842.00 |
| 12/13/2004 | VISG | Sell | 1,200 | $8.19 | $9,828.00 |
| 12/13/2004 | VISG | Sell | 300 | $8.20 | $2,460.00 |
| 12/13/2004 | VISG | Sell | 1,500 | $8.30 | $12,450.00 |
| 12/13/2004 | VISG | Sell | 1,000 | $8.55 | $8,550.00 |
| 12/13/2004 | VISG | Sell | 1,500 | $8.73 | $13,095.00 |
| 12/13/2004 | VISG | Sell | 1,500 | $8.85 | $13,275.00 |
| 12/14/2004 | VISG | Sell | 200 | $8.27 | $1,654.00 |
| 12/14/2004 | VISG | Sell | 500 | $8.27 | $4,135.00 |
| 12/14/2004 | VISG | Sell | 300 | $8.31 | $2,493.00 |
| 12/15/2004 | VISG | Sell | 200 | $8.50 | $1,700.00 |
| 12/22/2004 | VISG | Sell | 2,000 | $8.75 | $17,500.00 |
| 12/28/2004 | VISG | Sell | 5,000 | $9.30 | $46,490.50 |
| 1/13/2005 | VISG | Sell | 1,000 | $8.08 | $8,080.00 |
| 1/20/2005 | VISG | Sell | 1,250 | $7.70 | $9,625.00 |
| 1/21/2005 | VISG | Sell | 100 | $7.63 | $763.00 |
| 1/21/2005 | VISG | Sell | 400 | $7.63 | $3,052.00 |
| 1/21/2005 | VISG | Sell | 500 | $7.63 | $3,815.00 |
| 1/21/2005 | VISG | Sell | 1,050 | $7.53 | $7,906.50 |
| 1/21/2005 | VISG | Sell | 1,000 | $7.56 | $7,560.00 |
| 1/28/2005 | VISG | Sell | 100 | $7.40 | $740.00 |
| 1/28/2005 | VISG | Sell | 100 | $7.40 | $740.00 |
| 1/28/2005 | VISG | Sell | 800 | $7.40 | $5,920.00 |
| 2/3/2005 | VISG | Sell | 1,000 | $7.42 | $7,420.00 |
| 2/9/2005 | VISG | Sell | 1,000 | $6.10 | $6,100.00 |
| 2/10/2005 | VISG | Sell | 200 | $6.00 | $1,200.00 |

| 2/10/2005 | VISG | Sell | 500 | $6.00 | $3,000.00 |
| 2/10/2005 | VISG | Sell | 300 | $6.00 | $1,800.00 |
| 2/16/2005 | VISG | Sell | 500 | $5.79 | $2,895.00 |
| 2/16/2005 | VISG | Sell | 300 | $5.79 | $1,737.00 |
| 2/16/2005 | VISG | Sell | 300 | $5.79 | $1,737.00 |
| 2/16/2005 | VISG | Sell | 100 | $5.79 | $579.00 |
| 2/16/2005 | VISG | Sell | 100 | $5.79 | $579.00 |
| 2/16/2005 | VISG | Sell | 100 | $5.79 | $579.00 |
| 2/16/2005 | VISG | Sell | 100 | $5.79 | $579.00 |
| 2/16/2005 | VISG | Sell | 73 | $5.79 | $422.67 |
| 2/16/2005 | VISG | Sell | 27 | $5.79 | $156.33 |
| 2/16/2005 | VISG | Sell | 100 | $5.79 | $579.00 |
| 2/16/2005 | VISG | Sell | 500 | $5.79 | $2,895.00 |
| 2/16/2005 | VISG | Sell | 300 | $5.79 | $1,737.00 |
| 2/16/2005 | VISG | Sell | 500 | $5.79 | $2,895.00 |
| 2/16/2005 | VISG | Sell | 500 | $5.79 | $2,895.00 |
| 2/16/2005 | VISG | Sell | 100 | $5.79 | $579.00 |
| 2/16/2005 | VISG | Sell | 42 | $5.79 | $243.18 |
| 2/16/2005 | VISG | Sell | 100 | $5.79 | $579.00 |
| 2/25/2005 | VISG | Sell | 13 | $5.95 | $77.35 |
| 2/25/2005 | VISG | Sell | 87 | $5.95 | $517.65 |
| 2/25/2005 | VISG | Sell | 300 | $5.95 | $1,785.00 |
| 2/25/2005 | VISG | Sell | 600 | $5.95 | $3,570.00 |
| 2/25/2005 | VISG | Sell | 900 | $6.05 | $5,445.00 |
| 2/25/2005 | VISG | Sell | 100 | $6.05 | $605.00 |
| 3/1/2005 | VISG | Sell | 300 | $5.93 | $1,779.00 |
| 3/1/2005 | VISG | Sell | 400 | $5.93 | $2,372.00 |
| 3/1/2005 | VISG | Sell | 100 | $5.93 | $593.00 |
| 3/1/2005 | VISG | Sell | 100 | $5.93 | $593.00 |
| 3/1/2005 | VISG | Sell | 100 | $5.90 | $590.00 |
| 3/1/2005 | VISG | Sell | 300 | $5.90 | $1,770.00 |
| 3/1/2005 | VISG | Sell | 100 | $5.90 | $590.00 |
| 3/1/2005 | VISG | Sell | 500 | $5.90 | $2,950.00 |
| 3/1/2005 | VISG | Sell | 800 | $5.96 | $4,768.00 |
| 3/1/2005 | VISG | Sell | 500 | $5.97 | $2,985.00 |
| 3/1/2005 | VISG | Sell | 100 | $5.98 | $598.00 |
| 3/1/2005 | VISG | Sell | 500 | $5.99 | $2,995.00 |
| 3/1/2005 | VISG | Sell | 100 | $5.99 | $599.00 |

*%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS
Turnberry Asset Management

## DEFENDANTS
Viisage Technolgy, Inc. et al.

**(b)**  County of Residence of First Listed Plaintiff    New York County, NY
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Middlesex County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)
Leslie R. Stern, Esq. Berman DeValerio Pease Tabacco Burt & Pucillo
1 Liberty Sq., Boston, MA 02109 (617) 542-8300

Attorneys (If Known)    05 cv 10725 MLW

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS —Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN    (Place an "X" in One Box Only)

| | | | | | Appeal to District |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
§§11, 12(a)(2) & 15 of the Sec. Act of 1933; §§10(b) & 20(a) of the Sec. Exch. Act of 1934 & SEC Rule 10b-5,
Brief description of cause:
Plaintiffs bring this action as a class action for violations of the federal securities laws.

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):  JUDGE Mark L. Wolf    DOCKET NUMBER 1:05-cv-10438-MLW

DATE    04/12/2005

SIGNATURE OF ATTORNEY OF RECORD    Leslie R. Stern

## FOR OFFICE USE ONLY

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)____Turnbeery Asset Management v. Viisage Technology, Inc.____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   [ ]  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   [✓] II.    195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.           for patent, trademark or copyright cases

   [ ] III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

   [ ] IV.    220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

   [ ] V.     150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   Darquea v. Viisage Technology, Inc, 1:05-cv-10438

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
                                                           YES [ ]      NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
                                                           YES [ ]      NO [✓]
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
                                                           YES [ ]      NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
                                                           YES [ ]      NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
                                                           YES [✓]      NO [ ]

   A.   If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [✓]        Central Division [ ]        Western Division [ ]

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division [ ]        Central Division [ ]        Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
                                                           YES [ ]      NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Leslie R. Stern, Esq
ADDRESS  Berman DeValerio Pease Tabacco Burt & Pucillo, One Liberty Square, Boston, Ma 02109
TELEPHONE NO.  (617) 542-8300

(CategoryForm.wpd - 2/15/05)