**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS (BOSTON)**

| | :| |
|---|---|---|
| ERNESTO DARQUEA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Case No. 1:05-cv-10438-MLW** |
| | : | |
| VIISAGE TECHNOLOGY, INC., | : | |
| BERNARD BAILEY, WILLIAM K. | : | |
| AULET, and DENIS K. BERUBE, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF TURNBERRY ASSET GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFFS'**
**SELECTION OF CO-LEAD COUNSEL AND LIAISON COUNSEL**

| | | |
|---|---|---|
| GERALD D. BRODER, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Case No. 1:05-cv-10475-MLW** |
| | : | |
| VIISAGE TECHNOLOGY, INC., BERNARD BAILEY, WILLIAM K. AULET, and DENIS K. BERUBE, | : | |
| | : | |
| Defendants. | : | |
| JOHN FLYNN, On Behalf of Himself and All Others Similarly Situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Case No. 1:05-cv-10498-MLW** |
| | : | |
| VIISAGE TECHNOLOGY, INC., BERNARD BAILEY, WILLIAM K. AULET, and DENIS K. BERUBE, BUDDY G. BECK, MARCEL YON, and THOMAS J. REILLY, | : | |
| | : | |
| Defendants. | : | |
| MIN CHANG, Individually, and On behalf of All Others Similarly Situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **Case No. 1:05-cv-10537-MLW** |
| | : | |
| VIISAGE TECHNOLOGY, INC., BERNARD BAILEY, WILLIAM K. AULET, and DENIS K. BERUBE, | : | |
| | : | |
| Defendants. | : | |

|  |  |  |
|---|---|---|
| JOSEPH MARTIN, On Behalf of Himself and All Others Similarly Situated, | : : : | |
| Plaintiff, | : : | |
| v. | : : | **Case No. 1:05-cv-10577-MLW** |
| VIISAGE TECHNOLOGY, INC., BERNARD BAILEY, WILLIAM K. AULET, and DENIS K. BERUBE, | : : : : : : : | |
| Defendants. | : : | |
| DAPENG LUO, | : : : | |
| Plaintiff, | : : | |
| v. | : : | **Case No. 1:05-cv-10615-MLW** |
| VIISAGE TECHNOLOGY, INC., BERNARD BAILEY, WILLIAM K. AULET, DENIS K. BERUBE, BUDDY G. BECK, MARCEL YON, THOMAS J. REILLY, and CHARLES E. LEVINE | : : : : : : : | |
| Defendants. | : | |

|  |  |  |
|---|---|---|
| WAYNE CLARK, Individually and on behalf of All Others Similarly Situated, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | **Case No. 1:05-cv-10578-MLW** |
| VIISAGE TECHNOLOGY, INC., BERNARD BAILEY, WILLIAM K. AULET, and DENIS K. BERUBE, | : : : : : | |
| Defendants. | : : | |
| OLYMPIA LEVINSON STIEGELE, | : : : | |
| Plaintiffs, | : : : | |
| v. | : : | **Case No. 1:05-cv-10677-MLW** |
| BERNARD BAILEY, PAUL T. PRINCIPATO, PETER NESSEN, THOMAS J. REILLY, B. G. BECK. CHARLES E. LEVINE, WILLIAM K. AULET, and VIISAGE TECHNOLOGY, INC., | : : : : : : : | |
| Defendants. | : | |

|  |  |
|---|---|
| TURNBERRY ASSET MANAGEMENT, on behalf of itself and all others similarly situated, | : : : : |
| Plaintiff, | : : |
| v. | : |
| VIISAGE TECHNOLOGY, INC., BERNARD BAILEY, WILLIAM K. AULET, DENIS K. BERUBE, BUDDY G. BECK, MARCEL YON, THOMAS J. REILLY, CHARLES E. LEVINE, HARRIET MOUCHLY-WEISS, PAUL T. PRINCIPATO, and PETER NESSEN, | : : : : : : : : |
| Defendants. | : |

**Case No. 1:05-cv-10725-MLW**

Turnberry Asset Management ("Turnberry") and Electronic Trading Group, L.L.C. ("ETG"), Ronald Sauer ("Sauer") and David and Lance Hancock (the "Hancocks") (collectively "Movants" or the "Turnberry Asset Group") respectfully submit this Memorandum of Law in support of its motion for: (a) consolidating the above-captioned actions (the "Actions"); (b) appointing Movants as Lead Plaintiffs; and (c) approving Movants' selection of Entwistle & Cappucci LLP ("Entwistle & Cappucci") and Klafter & Olsen LLP ("Klafter & Olsen") as Co-Lead Counsel, and Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio") as Liaison Counsel.

**PRELIMINARY STATEMENT**

Presently pending in this District are at least nine related securities class action lawsuits on behalf of persons who purchased or otherwise acquired securities of Viisage Technology, Inc. ("Viisage" or the "Company"), between May 3, 2004, and March 2, 2005 inclusive (the "Class Period"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934

("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), Securities and Exchange Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder; and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2), and 77o against defendants Viisage and certain of Viisage's officers and directors.[1]

Among other things, the Private Securities Litigation Reform Act of 1995 ("PSLRA") provides for the appointment of a lead plaintiff and lead counsel in any private action brought pursuant to the Exchange Act and the Securities Act as a class action pursuant to Fed. R. Civ. P. 23. *See* 15 U.S.C. § 78u-4(a) and 15 U.S.C. § 77z-1(a). Pursuant to the PSLRA, prior to selecting a lead plaintiff, the Court must decide whether to consolidate related actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii) and 15 U.S.C. § 77z-1(a)(3)(B)(ii). As soon as practicable after a decision on consolidation has been rendered, the Court should appoint as the Lead Plaintiff the movant or group of movants with the largest financial interest in the litigation of those seeking such appointment and which otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See id.*

The Actions should be consolidated because they each involve similar allegations, namely, that defendants materially misstated the Company's financial condition and prospects

---

[1] Several of the related actions captioned above have differing class periods. For this motion, the longest of the class periods is used to ensure that the Court is aware that the movants herein will most adequately represent the entire class of purchasers of Viisage securities that was affected by the defendants' fraud. Differences in the appropriate length of the class period do note affect consolidation of the related cases, since such differences are resolved with the filing of a consolidated complaint. *See Skwortz v. Crayfish Co.*, No. 00 Civ. 6766 (DAB), 2001 U.S. Dist. LEXIS 15532, at *7 (S.D.N.Y. Sept. 28, 2001) (consolidating related cases because "the factual basis supporting the claims asserted in the Crayfish Actions are identical"); *Borenstein v. Finova Group*, No. CIV 00-619-PHX-SMM, 2000 U.S. Dist. LEXIS 14732, at *10-14 (D. Ariz. Aug. 30, 2000) (consolidating related cases with differing claims because the claims were based on the appointed lead plaintiff); *In re Microstrategy, Inc., Sec. Litig.*, 110 F. Supp. 2d 427, 431-32 (E.D. Va. 2000) (consolidating cases involving different class periods and naming different defendants).

which in turn caused class members to acquire the Company's securities at materially inflated levels.  All of the actions name Viisage and certain of its officers and/or directors as defendants and allege violations of the Exchange Act and Securities Act.  Accordingly, the legal and factual issues involved in the Actions overlap greatly, rendering consolidation appropriate. *See* Fed. R. Civ. P. 42(a) (consolidation is appropriate where there is a "common issue of law or fact").  Movants have conferred with counsel for defendants, who do not oppose consolidation.

Pursuant to the PSLRA, after consolidating related actions, the Court should appoint as the Lead Plaintiff the movant or group of movants that have demonstrated the "largest financial interest in the litigation" that also meets the typicality and adequacy prongs of Fed. R. Civ. P. 23. *See* 15 U.S.C. 78u-4(a)(3)(B)(iii); and 15 U.S.C. § 77z-1(a)(3)(B)(iii).  As demonstrated herein, the Turnberry Asset Group has a combined financial interest of $285,756.21 which is, to the best of their counsel's knowledge, the largest financial interest in this litigation of any plaintiff or lead plaintiff movant, are typical of the class they seek to represent and will more than adequately protect the interest of class members.  The Movants' selection of Entwistle & Cappucci and Klafter & Olsen to serve as Co-Lead counsel and Berman DeValerio as liaison counsel should be approved because, pursuant to the PSLRA, the Movants, as the presumptive Lead Plaintiff, selects counsel.  Entwistle & Cappucci, Klafter & Olsen and Berman DeValerio have extensive experience in the prosecution of securities class actions and will adequately represent the interests of all class actions.

## STATEMENT OF FACTS[2]

Viisage claims to be a leading provider of advanced technology identity solutions that enable governments, law enforcement agencies and businesses to enhance security, reduce

---

[2] These facts are derived from the allegations contained in the complaint filed by Turnberry Asset Management, captioned *Turnberry Asset Management v. Viisage Technology, Inc., et al.*, Case No. 05-cv-10725-MLW (filed April 12, 2005).

3

identity theft, and protect personal privacy. Viisage's operations began in 1993 and, except for fiscal years 1996 and 2000, incurred losses in each fiscal year. As of June 27, 2004, Viisage had approximately $12.6 million of cash and cash equivalents, and $29.8 million in total debt obligations. As a result, Viisage was in a near constant state of capital deficiency to fund its operations. At the same time, the Company was indebted to two of its directors (or entities controlled by them) for more than $20 million.

By late spring 2004, the Company was extremely cash poor, having only $9 million left in the Company's coffers. Defendants knew that unless they could immediately prop up the Company's share price and complete a secondary offering of Viisage stock, the Company's ability to continue as a going concern would be in jeopardy.

At multiple times during the Class Period, defendants continued to reassure prospective investors of profitability and, in fact, actually increased the Company's profitability estimates for 2004, stating, *inter alia*:

> "This progress provides us with the confidence to confirm our guidance for 2004. We continue to expect revenue between $60-63 million and EBITDA of $11-12 million."

> "Company increases guidance for 2004."

> "The Company's performance for the third quarter, combined with our accomplishments so far this quarter, give us the confidence to increase both our revenue and EBITDA guidance for 2004."

> "[W]e are pleased with the terms of our acquisition of Imaging Automation, since we believe this transaction will be accretive on a net income. EBITDA and EPS basis in 2005, and will help us continue to drive revenue and profit growth not only this year, but for many years to come."

> "Viisage is increasing its guidance for 2004, with annual revenue now anticipated to be between $66-68 million, increased from $60-63 million, and EBI'TDA anticipated to be between $11.5-12.5

4

million, increased from EBITDA of $11-12 million."

Moreover, on July 22, 2004, Viisage filed an amended Registration Statement with the SEC with respect to Viisage's forthcoming secondary offering of at least 7.5 million shares of common stock (the "Secondary Offering"). The July 22, 2004 Amended Form S-3 was signed by defendants Bailey, Aulet, Berube, Mouchly-Weiss, Principato, Levine, Nessen, Reilly, Beck, and Yon. On August 5, 2004, Viisage filed its final prospectus on Form 424B4 with the SEC in connection with its Secondary Offering priced at $5.50 per share. The August 5, 2004 Secondary Offering raised approximately $38 million for Viisage and approximately $2.3 million for several of the individual defendants. In connection with the August 5, 2004 Secondary Offering, Turnberry purchased approximately 25,000 shares from one of the Company's underwriters, JP Morgan.

On February 7, 2005, defendants announced that Viisage would meet the previously stated revenue guidance for 2004 and report $66-$67 million in revenues for 2004. However, the Company also stated that it would not meet its previously issued earnings guidance of $11.5 - $12.5 million in EBITA and would instead report only between $8-$9 million in EBITA. In addition, rather than report a $1.5 million loss as previously projected, Viisage anticipated a loss of approximately $7-8 million. The Company claimed that the earnings shortfall was "primarily due to several non-recurring factors, including a non-cash impairment charge of $2 million in connection" with litigation relating to the Georgia DMVS contract. Viisage also blamed a tax election taken in the fourth quarter but which was related to it acquisition of TDT on February 14, 2004 i.e. the first quarter of 2004. Further, defendants blamed "Sarbanes-Oxley Section 404 Compliance" claiming that "despite work undertaken in prior quarters, Viisage experienced

5

higher than anticipated costs related to its Sarbanes-Oxley compliance efforts" totaling $550,000 in the fourth quarter.

On March 2, 2005, after the market closed, the Company issued a press release entitled "Viisage Reports Fourth Quarter 2004 Results." The press release stated in part:

> In connection with the preparation of the Company's consolidated financial statements for the year ended December 31, 2004, the Company determined that it had an internal control deficiency that constitutes a 'material weakness' as defined by the Public Company Accounting Oversight Board's Accounting Standard No. 2. The Company has concluded that it had insufficient personnel resources and technical accounting expertise within the accounting function to resolve non-routine or complex accounting matters. As a result, management will be unable to conclude that the Company's internal controls over financial reporting are effective as of December 31, 2004. Therefore, BDO Seidman LLP, the Company's external accounting firm, will issue an adverse opinion with respect to the effectiveness of the Company's internal controls over financial reporting. In addition, as part of the Sarbanes-Oxley Section 404 compliance review, the Company is in the process of reviewing all of its other key internal control processes as well. While the evaluation - is ongoing, management believes that it will likely conclude that the Company had significant deficiencies, which could constitute a material weakness, in the control processes around information technology systems as well.

As a result of this disclosure, the Company's shares plummeted 25% to $4.50 per share on March 3, 2005, causing shareholders to lose tens of millions of dollars, as well as calling into question the veracity of defendants' prior statements. On March 17, 2005, shareholders were again stunned by alarming news when the Company admitted that it could not file its annual report on time. Although required by SEC regulations, the Company admitted it could not file a "complete and accurate annual report." With this news, the Company's shares once again fell dramatically.

6

On March 31, 2005, the Company announced that it would be delayed in filing its Form 10-K for the year ended December 31, 2004, in order to provide additional time for the Company, its independent auditors and outside counsel to complete a review of the litigation involving the Company. As a result of the delay in filing its Form 10-K, Viisage's stock was delisted from the NASDAQ national market, changing the Company's trading symbol from "VISG" to "VISGE."

As a result of the defendants' false statements, Viisage's stock price traded at artificially inflated levels during the Class Period, which allowed the Company and its top officers and directors to sell more than $39 million worth of Company shares in the August 5, 2004 Secondary Offering. After the Company made its March 3, 2005 disclosure, the precipitous drop in Viisage's share price was followed by an immediate outcry from Wall Street analysts (including Unterberg Towbin and JMP Securities) who collectively downgraded the Company's shares.

## ARGUMENT

### POINT I

### THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation is appropriate when there is "a common question of law or fact pending before the Court." Fed. R. Civ. P. 42(a). *See generally Enterprise Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994). The standard under Rule 42(a) is clearly met here. The Actions assert class claims on behalf of the purchasers and acquirers and/or sellers of Viisage securities for alleged violations of the Exchange Act and Securities Act during similar and largely overlapping class periods. All of the Actions name the Company and certain of its officers and/or directors as defendants and involve the same factual and legal issues, namely, whether plaintiffs purchased and/or acquired Viisage securities at artificially inflated prices as a result of defendants' alleged

7

false and misleading statements and whether defendants' conduct violates Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5, promulgated thereunder. Additionally, the action commenced by Turnberry Asset Management is the only action which asserts claims based upon violations of Sections 11, 12(a)(2), and 15 of the Securities Act.

More specifically, each of the Actions allege that Viisage made material misstatements about the Company's financial prospects. While the various actions differ in certain respects, such as the class period and the defendants, such differences are irrelevant because the Actions unquestionably involve common questions of law and fact. *See* Fed. R. Civ. P. 42(a). *See also In re MicroStrategy Inc. Secs. Litig*., 110 F. Supp. 2d at 431 ("Significantly, the existence of slight differences in class periods, parties, or damages among the suits does not necessarily defeat consolidation where the essential claims and factual allegations are similar."); *In re Century Bus. Servs. Sec. Litig*., 202 F.R.D. 532, 537 (N.D. Ohio 2001) (consolidating suits involving class periods with no overlap in time); *Zaltzman v. Manugistics Group, Inc*., 1998 U.S. Dist. Lexis 22867, at *8 (D. Md. Oct. 8, 1998) (consolidating suits "despite the fact that the named defendants are not identical in each case"); *Takeda v. Turbodyne Techs., Inc*., 67 F. Supp. 2d 1129 (C.D. Cal. 1999) (consolidating suits despite differences in class period). Accordingly, the Actions should be consolidated.

## POINT II

## MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS

### A.     The Procedure Required By The PSLRA

The PSLRA has established a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i); and 15 U.S.C. § 77z-1(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i) and 15 U.S.C. § 77z-1(a)(3)(A)(i). Plaintiff in the first-filed action captioned *Darquea v. Viisage Technology, Inc., et al.*, 1:05-cv-10438-MLW, caused notice to be published on Business Wire on March 8, 2005. See Exhibit A to the Declaration Of Stephen D. Oestreich In Support Of Motion Of The Turnberry Asset Group's As Lead Plaintiff And For Approval Of Its Selection Of Co-Lead And Liaison Counsel ("Oestreich Declaration"), filed contemporaneously herewith. Within 60 days after publication of the notice any person or group of persons who are members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §§ 78u-4(a)(3)(A) and (B); 15 U.S.C. § 77z-1(a)(3)(A) and (B).

Second, the PSLRA provides that within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. § 78u-4(a)(3)(B) and 15 U.S.C. § 77z-1(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
>> (aa) has either filed the complaint or made a motion in response to a notice...
>>
>> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>>
>> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

9

15 U.S.C. § 78u-4(a)(3)(B)(iii); and 15 U.S.C. § 77z-1(a)(3)(B)(iii); *see also In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 42 (D. Mass. 2001).

  **B.**  **The Turnberry Asset Group Satisfies The "Lead Plaintiff" Requirements Of The Exchange Act**

    **1.**  **Turnberry Asset Group Has Complied With The Securities Act and Exchange Act And Should Be Appointed Lead Plaintiff**

The time period in which Class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. § 78u-4(a)(3)(A) and (B); and 15 U.S.C. § 77z-1(a)(3)(A) and (B) expires on May 9, 2005. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on March 8, 2005), Movants timely move this Court to be appointed Lead Plaintiffs on behalf of all members of the Class.

Movants have duly signed and filed certifications stating that they have reviewed the allegations of a complaint in this action and are willing to serve as representative parties on behalf of the Class. *See* Exhibit B (Certification of Turnberry, ETG, Sauer, and Hancocks) to the Oestreich Declaration. In addition, Movants have selected and retained competent counsel to represent them and the Class. *See infra*, Point II; Exhibits D, E, and F (firm resumes of Entwistle & Cappucci, Klafter & Olsen and Berman DeValerio Pease Tabacco Burt & Pucillo, respectively) to the Oestreich Declaration. Accordingly, the Turnberry Asset Group satisfy the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and 15 U.S.C. § 77z-1(a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiff and its selection of Entwistle & Cappucci and Klafter & Olsen to serve as Co-Lead Counsel and Berman DeValerio Pease Tabacco Burt & Pucillo to serve as Liaison Counsel considered and approved by the Court.

10

## 2. The Turnberry Asset Group Has The Requisite Financial Interest In The Relief Sought By The Class

During the Class Period, as evidenced by the certifications signed by or on behalf of Turnberry, ETG, Sauer, and the Hancocks (*see* Oestreich Decl. Exhibit B) and analysis of their transactions in Viisage securities (*see* Oestreich Decl. Exhibit C), Movants have suffered losses in excess of $285,756.21. Upon information and belief, the Movants' financial interest in this matter is the largest of any competing lead plaintiff movant. Therefore, the Movants satisfy all of the PSLRA's prerequisites for appointment as Lead Plaintiffs in this action and should be appointed Lead Plaintiffs pursuant to 15 U.S.C. 78u-4(a)(3)(B); 15 U.S.C. § 77z-1(a)(3)(B). *See Schulman* v. Lumenis, Ltd., No. 02 Civ. 1989 (DAB), 2003 U.S. LEXIS 10348, at *12 (S.D.N.Y. June 17, 2003)(appointing movant group with the largest financial interest as lead plaintiff.).

## 3. Movants Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B); and 15 U.S.C. § 77z-1(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Only two prerequisites to class certification, typicality and adequacy directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for

class certification. *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *20 (N.D. Ill. Aug. 6, 1997); *Fischler v. Amsouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997). Turnberry, ETG, Sauer, and the Hancocks satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiffs.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Priest v. Zayre Corp.,* 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted).

The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review,* 637 F.2d 1014, 1024 (5th Cir. 1981). Turnberry, ETG, Sauer, and the Hancocks satisfy the typicality requirement because, just like all other Class members, they: (1) purchased or otherwise acquired Viisage securities during the Class Period; (2) purchased Viisage securities at prices artificially inflated as a result of the allegedly materially false and misleading statements issued by defendants; and (3) suffered

damages thereby. Thus, Movants' claims are typical of those of other Class members since its claims and the claims of other Class members arise out of the same course of events.

Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." To satisfy the adequacy requirement of Rule 23(a)(4) "'there must be an absence of conflict of interest, and the presence of common interests and injury as among the class representatives and the rest of the class." *In re Unumprovident Corp. Secs. Litig*., No. 1:03-cv-049 2003 U.S. Dist. LEXIS 24622,* at \*26 (E.D. Tenn. Nov. 6, 2003), *quoting Rutherford v. City of Cleveland,* 137 F.3d 905, 909 (6th Cir. 1998).

Here, Movants are adequate representatives of the Class. As evidenced by the injury suffered by Movants, which acquired more than 414,742 Viisage shares at prices artificially inflated by defendants' materially false and misleading statements, the interests of Movants are clearly aligned with the members of the Class, and there is no evidence of any antagonism between Movants' interests and those of the other members of the Class. Further, Movants have taken significant steps which demonstrate it will protect the interests of the Class: it has retained competent and experienced counsel to prosecute these claims and to further investigate the facts giving rise to this action. In addition, as shown below, Movants' proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movants *prima facie* satisfy the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

## POINT III

### MOVANT'S SELECTION OF LEAD AND LIAISON COUNSEL SHOULD BE APPROVED

Movants have selected Entwistle & Cappucci and Klafter & Olsen to serve as Co-Lead Counsel, and Berman DeValerio to serve as Liaison Counsel, subject to Court approval.

Entwistle & Cappucci possesses extensive experience litigating securities class actions and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors. Entwistle & Cappucci currently serve as Lead Counsel or as chair of Plaintiffs' Executive Committees in many high profile securities actions pending throughout the country. Among other appointments as Lead Counsel, Entwistle & Cappucci was recently appointed Lead Counsel in *In re Royal Ahold N.V. Sec.*, No. 1:03-md-1539 (D. Md.); *In re Novastar Sec. Litig.*, No. 04-CV-330 (W.D. Mo.); and *In re Nokia Sec. Litig.*, No. 04-CV-2646 (S.D.N.Y). Entwistle & Cappucci's ability to prosecute the most complex litigation is well demonstrated by its efforts in *In re BankAmerica Corp. Sec. Litig.*, one of the largest securities class actions in history.

The principal attorneys at Klafter & Olsen bring over thirty-two years of collective experience in representing plaintiffs and defendants in a wide variety of litigation matters including securities, antitrust, corporate governance, and derivative actions as well as concurrent bankruptcy proceedings. Among other appointments as Lead Counsel, the Firm is currently co-lead counsel in the following securities class actions: *Davidoff et al. v. Farina, et al.*, No. 04-CV-7617(NRB)(S.D.N.Y.); *In re Eaton Vance Corporation Securities Litigation*, Civil Action No. 01-10911-EFH (D. Mass.); and *Broderick et al. v. PricewaterhouseCoopers LLP*, No. CV 98-1658 MRP (C.D. Cal.). In addition, proposed Liaison Counsel Berman DeValerio also possesses extensive experience in class litigation and are well known to courts in this District.

**CONCLUSION**

For the foregoing reasons, Movants satisfy the requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as lead plaintiff in this action and should be appointed lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); 15 U.S.C. § 77z-1(a)(3)(B). Movants respectfully request that this Court: (a) appoint Movants as Lead Plaintiffs pursuant to §

14

21D(a)(3)(B); and (b) approve its selection of Entwistle & Cappucci and Klafter & Olsen as Co-Lead Counsel and Berman DeValerio as Liaison Counsel.

Dated:  Boston, Massachusetts

    May 9, 2005

        **BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**

        By:_  /s/_ Leslie R. Stern_____
Leslie Stern BBO# 631201
One Liberty Square
Boston, MA 02109
(617) 542-8300

Stephen D. Oestreich
Robert N. Cappucci
William W. Wickersham
**ENTWISTLE & CAPPUCCI LLP**
299 Park Avenue
New York, NY 10171
(212) 894-7200

Jeffrey A. Klafter
Kurt B. Olsen
**KLAFTER & OLSEN LLP**
1311 Mamaroneck Ave., Suite 220
White Plains, NY 10602
(212) 997-5656

15